BALDOCK, Circuit Judge.
 

 Plaintiff-appellant Fred T. Miller appeals the entry of summary judgment in favor of defendants, the Coastal Corporation (“Coastal”) and the Pension Plan for Em
 
 *623
 
 ployees of the Coastal Corporation (“Coastal Pension Plan”). Mr. Miller claims certain unpaid pension benefits from defendants under a federal common law estoppel theory. The district court held that no liability exists under the Employee Retirement Income Security Act of 1974 (“ERISA”), 29 U.S.C. § 1001 to § 1461, for purported modifications to the terms of an ERISA-governed pension plan, regardless of whether the purported modifications are based on oral promises or informal written statements.
 
 Miller v. Pension Plan for Employees of Coastal Corp.,
 
 780 F.Supp. 768, 771 (D.Kan.1991). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.
 

 We review the grant or denial of summary judgment de novo, using the same standards the district court applies.
 
 Osgood v. State Farm Mut. Auto. Ins. Co.,
 
 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c);
 
 see Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).
 

 Mr. Miller was employed at the Derby Refinery from December 4, 1950, to January 1, 1989. He was an hourly employee and a member of a collective bargaining unit until 1974. From October 1, 1955, until July 31, 1968, Mr. Miller participated in and accrued pension benefits under the Colorado Oil and Gas Retirement Plan.
 
 [1]
 
 Mr. Miller accrued benefits under a restated and renamed version of this plan, the CIC Industries, Inc. Retirement Plan, from August 1, 1968, to December 31, 1968. In January 1969, CIC Industries, which then owned the Derby Refinery, restated the CIC Industries Inc. Retirement Plan to establish a separate plan for members of the collective bargaining unit, known as the Derby Refining Company Pension Plan (“Union Plan”). As a union employee, Mr. Miller began participating in the Union Plan on January 1, 1969, and accrued pension benefits under this plan until April 15, 1974.
 

 Coastal acquired the Derby Refinery in 1973. On April 15, 1974, Coastal promoted Mr. Miller to the salaried, nonunion position of assistant operating superintendent. Mr. Miller was no longer eligible to participate in the Union Plan and he began participating in the Pension Plan for Salaried Employees of Coastal States Gas Corporation, the predecessor plan to the defendant Coastal Pension Plan. Mr. Miller accrued pension benefits under the Coastal Pension Plan until his retirement on January 1, 1989.
 

 Mr. Miller claims that when he was promoted to his salaried position, he was told that all his prior service would be computed as if he had been á salaried employee. Starting in 1976, Mr. Miller received annual written statements from the Coastal Pension Plan concerning his pension benefits.
 
 [2]
 
 Mr. Miller claims that for a period of ten years these annual statements calculated his retirement benefits as if he had been a salaried employee before his promotion in 1974. Mr. Miller alleges in his complaint that these written statements confirmed the oral representation previously made and also substantiated that the Coastal Pension Plan was indeed calculating his pension benefits as though he had been a salaried employee before his promotion. Appellant’s App., doc. A-l at 3.
 

 
 *624
 
 Upon Mr. Miller's retirement, however, his pension benefits under the Coastal Pension Plan were not calculated as though he had always been a salaried employee of the Derby Refinery. According to the terms of the Coastal Pension Plan, a participant’s retirement benefit is determined under a benefit formula. One factor of the benefit formula is the participant’s years of “credited service,” as that term is defined by the Coastal Pension Plan. An administrative committee in charge of the Coastal Pension Plan determined that Mr. Miller’s credited service for purposes of calculating his benefits under the Coastal Pension Plan included only the period during which he was actually a salaried employee of the Derby Refinery,
 
 i.e.,
 
 April 15, 1974, to January 1, 1989. Thus, Mr. Miller’s years of employment as an hourly union employee were not treated as years of credited service under the Coastal Pension Plan. Instead, the committee decided that Mr. Miller’s retirement benefit for his years as an hourly union employee should be limited to the benefit available under the terms of the Union Plan.
 

 Mr. Miller brought this action under 29 U.S.C. § 1132(a)(1)(B) to recover those retirement benefits that he would have received had his years as an hourly union employee been treated as years of credited service under the Coastal Pension Plan. Mr. Miller does not argue that the benefits he now claims are owed to him pursuant to the language of the plan. He even concedes that to treat his years as an hourly union employee as years of “credited service” would flatly contradict the unambiguous terms of the Coastal Pension Plan. Instead, Mr. Miller argues that defendants’ oral and written representations entitle him to the benefits and, furthermore, defendants are equitably estopped from now denying these benefits. The district court found that defendants are not liable under ERISA for the benefits Mr. Miller claims.
 

 On appeal, Mr. Miller urges this court to recognize a federal common law estoppel claim under ERISA when the claim is based upon written communications instead of oral statements. We have clearly stated in
 
 Straub v. Western Union Telegraph Co.,
 
 851 F.2d 1262, 1265 (10th Cir.1988), that “no liability exists under ERISA for purported
 
 oral
 
 modifications of the terms of an employee benefit plan.” (Emphasis added.) ERISA requires all plans to be “established and maintained pursuant to a written instrument.” 29 U.S.C. § 1102(a)(1) ERISA also requires the written instrument to describe the formal procedures by which a plan can be amended. 29 U.S.C. § 1102(b)(3). In
 
 Straub
 
 we concluded that “ERISA’s express requirement that the written terms of a benefit plan shall govern forecloses the argument that Congress intended for ERISA to incorporate state law notions of promissory estop-pel.”
 
 Straub,
 
 851 F.2d at 1265-66.
 

 Mr. Miller tries to distinguish
 
 Straub
 
 by pointing out that his estoppel claim is based primarily upon written statements, sent annually over a ten-year period, which summarized his benefits under the Coastal Pension Plan. An employee benefit plan cannot be modified, however, by informal communications,
 
 Straub,
 
 851 F.2d at 1265, regardless of whether those communications are oral or written,
 
 Coleman v. Nationwide Life Ins. Co.,
 
 969 F.2d 54, 59 (4th Cir.1992). ERISA requires all modifications to an employee benefit plan to be written, 29 U.S.C. § 1102(a)(1), and to conform to the formal amendment procedures, 29 U.S.C. § 1102(b)(3). The district court found that the written benefit statements were not formal plan documents,
 
 Miller,
 
 780 F.Supp. at 772, nor were they otherwise a part of the Coastal Pension Plan,
 
 id.
 
 at n. 3.
 
 [3]
 

 ERISA’s requirements are designed “to protect ... the interests of participants in employee benefit plans and their beneficiaries....” 29 U.S.C. § 1001(b). As we noted in
 
 Straub,
 
 to allow oral modifications under some theory of federal common law would undermine the protection afforded by ERISA’s requirements.
 
 Straub,
 
 851 F.2d at 1265 (quoting
 
 Nachwalter v. Christie,
 
 805 F.2d 956, 960 (11th Cir.1986)).
 
 *625
 
 “ ‘[Ejmployees would be unable to rely on these plans if their expected retirement benefits could be radically affected by funds dispersed to other employees pursuant to oral agreements.’ ”
 
 Id.
 
 These same concerns are implicated when, as here, a plan participant tries to enforce an informal written agreement under a theory of federal common law estoppel. As we indicated in
 
 Straub,
 
 we will not import notions of promissory estoppel into ERISA.
 
 Straub,
 
 851 F.2d at 1265-66;
 
 see also Peckham v. Gem State Mut.,
 
 964 F.2d 1043, 1050 (10th Cir.1992) (applying
 
 Straub
 
 to conclude that claims based on the doctrine of promissory estoppel are precluded by ERISA). We hold that there is no liability under ERISA for purported informal written modifications to an employee benefit plan.
 

 Mr. Miller also raises another argument. He claims that the circumstances of this appeal demand departure from the general rule relied upon by the district court that ERISA precludes estoppel claims. He draws our attention specifically to his claim that the alleged representations
 
 clearly contradicted
 
 the unambiguous terms of the Coastal Pension Plan. According to Mr. Miller, the only information he received concerning defendants’ computation of credited service was provided in the form of the alleged oral and written representations. Appellant’s Reply Br. at 3. Further, Mr. Miller claims he relied on the computation of benefits in the annual written statements to plan his retirement years. Mr. Miller argues that the district court’s ruling saddles all plan participants with an unrealistic and unjust burden — the burden to recognize when correspondence from plan administrators conflicts with the often intricate and complex terms of a pension plan. Finally, Mr. Miller argues that congressional intent, public policy, and the language of ERISA mandate that we recognize a federal common law estoppel claim in situations like this, when the substance of the alleged representations flatly contradicts the unambiguous language of the plan.
 

 We have already decided that an estoppel claim is not available under ERISA,
 
 Straub,
 
 851 F.2d at 1266, and we decline Mr. Miller’s invitation to modify our decision in light of the present facts. Although Mr. Miller suggests that his circumstances are particularly egregious, we note that he makes no allegations of lies, fraud, or intent to deceive on the part of the Coastal Pension Plan. Mr. Miller refers to the written representations simply as a “mistake” made by the defendants. Although the mistake directly conflicted with the terms of the plan, which he suggests he never saw, he could have obtained the “instruments under which the plan is established or operated” upon written request. 29 U.S.C. § 1024(b)(4). The facts of this case do not provide us the opportunity to address whether an estoppel claim exists in limited, extraordinary circumstances.
 

 The judgment of the United States District Court for the District of Kansas is AFFIRMED.
 

 [1]
 

 . None of the pension benefits for Mr. Miller’s employment before October 1, 1955, are involved in this case.
 

 [2]
 

 . Both parties have stipulated that Mr. Miller received these annual benefit statements and that at least one of these statements included the following disclaimer:
 

 The information shown in this statement is based on personal information in effect at the time the report was prepared and on various assumptions as to future events. While great care has been taken in developing this information it may, in some cases, be subject to inaccuracies in the accumulation of data or in calculations. In the event of a discrepancy between the information contained in this statement and the plan document, the latter will govern.
 

 Appellant’s App., doc. C-l at 9.
 

 [3]
 

 . Mr. Miller does not challenge these findings on appeal.