Wanda **AROCHO, Plaintiff,**

v.

**GOODYEAR TIRE & RUBBER COMPANY, and Aetna Life Insurance Company, Defendants.**

**No. 97–4180–SAC.**

United States District Court,
D. Kansas.

Feb. 4, 2000.

Charles R. Hay, Goodell, Anne M. Kindling, Stratton, Edmonds & Palmer, Topeka, KS, for Plaintiff.

John W. Cowden, Curtis C. Landherr, Patricia A. Rosa, Toni R. Wheeler, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, for defendants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on the defendants' motion for summary judgment

(Dk.34) and the plaintiff's motion for summary judgment (Dk.36). The plaintiff Wanda Arocho brings this action to recover benefits claimed under an Optional Contributory Life Insurance Plan ("Optional Plan") offered to her husband, Hector Arocho, as an employee of the defendant Goodyear Tire & Rubber Company ("Goodyear"). The plaintiff contends her husband enrolled in this Optional Plan issued to Goodyear by Aetna Life Insurance Company ("Aetna") and he paid insurance premiums to Goodyear for it. The defendants have refused to pay the plaintiff the proceeds under the Optional Plan after her husband's death. The defendants contend the proceeds are not payable as the plaintiff's husband died just two days before the Optional Plan's coverage became effective.

## SUMMARY JUDGMENT STANDARDS

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 346 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

## STATEMENT OF UNCONTROVERTED FACTS

For purposes of these motions, the court considers the following statements to be uncontroverted.

1. The plaintiff Wanda Arocho is the widow of Hector Arocho and the beneficiary of his life insurance policies and plans.

2. For all relevant time periods, Hector was an employee of the defendant Goodyear. Hector died on August 30, 1996.

3. In 1995, Aetna issued to Goodyear a Group Insurance Policy (GP–40154–C).

4. As a Goodyear employee, Hector was covered under the Basic Life Insurance Policy in the amount of $30,000.00. By letter dated July 15, 1996, Hector and other employees were informed that they could enroll for the Optional Plan:

> An analysis of the Optional Contributory Life Insurance Plan shows that over 20% of our associates are not enrolled. Our records indicate that you are one of those who missed the opportunity to enroll during the last open enrollment period.
>
> You currently have $30,000 of basic life insurance coverage. Under the Optional Contributory Life Insurance Plan you may elect to purchase ... of additional life insurance....
>
> There will be an open enrollment for all active associates who are currently not enrolled for Optional Contributory Life Insurance. This open enrollment will be during the month of August with coverage to be effective on September 1, 1996. The first premium payment will not be deducted until September.

If you wish to enroll, simply complete the enclosed enrollment card and return it to your plant Human Resources representative no later than August 31, 1996.

(Dk.35, Ex. F). A Goodyear employee pays the entire premium for this optional coverage without any contribution from Goodyear.

5. Hector discussed with his family this opportunity to enroll for the optional coverage. They agreed to purchase the maximum amount of additional life insurance benefits.

6. Hector signed and turned in the enrollment form on July 29, 1996, requesting additional coverage in an amount equal to 300% of his basic life insurance coverage or $90,000.00 additional coverage. The enrollment form did not state an effective date for coverage. A Goodyear representative who has not been identified wrote "Effect. 9-1-96" and "Do not Pay" on the enrollment form.

7. Hector's pay statement for the period of August 12–18, 1996, shows that Goodyear deducted $36.00 for the Optional Plan. On September 30, 1996, Goodyear forwarded to Aetna a lump sum of deductions from employees' wages which included the amount deducted from Hector's wages.

8. There has not been any payment of proceeds under the Optional Plan after Hector's death. Goodyear's stated reason for not paying those proceeds is that the insurance was not in effect when Hector died. His death occurred on August 30, 1996, two days before September 1, 1996, the effective coverage date stated in the letter of July 15, 1996. Aetna's stated reason for not paying those proceeds is that Goodyear did not submit a claim for benefits under the Optional Plan.

9. Goodyear's "Death Claim Log" dated September 25, 1996, shows that Goodyear submitted a claim with regard to Hector Arocho on that date along with an Employer's Statement of Proof of Death for the Basic Life Insurance Policy of $30,-000.00. The plaintiff received the $30,-000.00 in benefits under that policy.

10. In a letter dated June 4, 1997, to the plaintiff's attorney, Ms. Robyn Crane, an attorney for Goodyear, wrote, in part:

The July 15th letter, which was sent from Akron to several locations, also stated that the first premium payment would be deducted until September. That statement was not applicable to our Topeka plant which deducts premiums one month in advance. Hence, the premium deducted from Mr. Arocho's August 18, 1996 pay would have applied for September coverage if it had gone into effect. That premium was refunded. (We also refund premiums deducted in advance relating to employees who retire.)

(Dk.37, Ex. H). On December 22, 1997, Goodyear issued a check to the Estate of Hector Arocho in the amount of $36.00 with an attached statement indicating it was a refund of life insurance premium.

## PREEMPTION

The defendants seek summary judgment arguing that the plaintiff brings state-law claims for breach of contract, waiver and estoppel, and breach of fiduciary duty and that these claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* In response, the plaintiff essentially concedes any state law claims would be preempted by ERISA, but she maintains her complaint still alleges appropriate ERISA claims. Specifically, the plaintiff couches her claims in federal terms as a claim for breach of contractual rights under the employee benefit plan, a claim of waiver and estoppel under federal common law, and a claim for breach of fiduciary obligations under the plan. In reply, the defendants contest that the plaintiff has ever pleaded an ERISA claim and oppose giving the plaintiff an opportunity now to amend her complaint to assert one.

Through its preemption clause, 29 U.S.C. § 1144(a), ERISA preempts all state laws insofar as they "relate to any employee benefits plan." *See Dang v.*

*UNUM Life Ins. Co. of America,* 175 F.3d 1186, 1190 (10th Cir.1999). " 'A law relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.' " *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). "A common law cause of action which 'relates to' ERISA is preempted unless it falls within one of the exceptions to § 514(a) [29 U.S.C. § 1144(a) ]." *Cannon v. Group Health Service of Oklahoma, Inc.,* 77 F.3d 1270, 1273 (10th Cir.), *cert. denied,* 519 U.S. 816, 117 S.Ct. 66, 136 L.Ed.2d 27 (1996). "State law contract claims are preempted 'if the factual basis of the cause of action involves an employee benefit plan.' " *Caldwell v. Western Atlas Intern.,* 871 F.Supp. 1392, 1395 (D.Kan.1994) (quoting *Kelso v. General Am. Life Ins. Co.,* 967 F.2d 388, 390 (10th Cir.1992)). "State common law claims based on the doctrine of estoppel by conduct 'relate to' a benefit plan," and they "are therefore preempted by ERISA." *Peckham v. Gem State Mut. of Utah,* 964 F.2d 1043, 1051 (10th Cir. 1992). A breach of fiduciary duty claim is the type of claim that courts consistently have found preempted by ERISA. *Cannon,* 77 F.3d at 1273.

■ In light of the above authority and the plaintiff's concession, the court finds that to the extent alleged in her amended complaint the plaintiff's state law claims are preempted by ERISA. The procedural dispute remaining is whether the complaint should be dismissed, whether the plaintiff's complaint should be construed to allege proper actions under ERISA, or whether the plaintiff should be allowed leave to amend her complaint. The defendants removed this action asserting ERISA governed the life insurance policy under which the plaintiff sought recovery. (Dk.1). The plaintiff subsequently filed an amended complaint laying out three separate counts and legal theories for recovering the proceeds under the Optional Plan. (Dk.14). It is true that the complaint does not refer to any ERISA provision for bringing a civil action or obtaining relief. This omission, however, is not fatal in itself:

> As a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, "provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits." (citations omitted). The purpose of "fact pleading," as provided by Fed. R.Civ.P. 8(a)(2), is to give the defendant fair notice of the claims against him without requiring the plaintiff to have every legal theory or fact developed in detail before the complaint is filed and the parties have opportunity for discovery. (citation omitted).

*Evans v. McDonald's Corp.,* 936 F.2d 1087, 1090–91 (10th Cir.1991); *see Caldwell v. Western Atlas Intern.,* 871 F.Supp. at 1395–96. Under our system of notice pleading, dismissal of the complaint under these circumstances is unnecessary. *See Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1075, 1077–78 (7th Cir.1992) ("[A] complaint reciting that the claim depends on the common law of contracts is *really* based on the ERISA if the contract in question is a pension plan. Congress has blotted out (almost) all state law on the subject of pensions, so a complaint about pensions rests on federal law no matter what label its author attaches."); *Kirch v. Health Care Service Corp.,* No. 97–5791, 1997 WL 538683 (N.D.Ill. Aug.27, 1997).

Instead of dismissing a complaint for failing to include an ERISA citation, "the court must determine whether plaintiff's allegations state a claim for relief under one of ERISA's civil enforcement provisions." *Caldwell,* 871 F.Supp. at 1395 (citing *Slice v. Norway,* 978 F.2d 1045, 1046–47 (8th Cir.1992)). Section 502(a)(1)(B) of ERISA provides that a participant or beneficiary of an ERISA plan may bring a

civil action "to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "A claim under this section, in essence, is the assertion of a contractual right under a benefit plan." *Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 140 (2nd Cir.1999) (citing *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1133 (7th Cir.1992)). At least facially in count one, the plaintiff states a claim to recover insurance proceeds or benefits under the Optional Plan, and such a claim "falls within the scope of" this ERISA provision. *See Carland v. Metropolitan Life Ins. Co.*, 935 F.2d 1114, 1119 (10th Cir.), *cert. denied*, 502 U.S. 1020, 112 S.Ct. 670, 116 L.Ed.2d 761 (1991). In separate sections to follow, the court will discuss the viability of this claim as well as the availability of federal relief under the plaintiff's other legal theories of waiver/estoppel and breach of fiduciary duty. The plaintiff advances all of these claims seeking the same relief: the recovery of life insurance proceeds under the Optional Plan.

## STANDARD OF REVIEW

■ A court reviews a decision denying benefits under an ERISA plan *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Stated another way, " '[a] court reviewing a challenge to a denial of employee benefits under 29 U.S.C. § 1132(a)(1)(B) applies an arbitrary and capricious standard to a plan administrator's actions if the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms.' " *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1097 (10th Cir.1999) (quoting *Charter Canyon Treatment Center v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998)). In *Kimber*, the Tenth Circuit recently said:

When reviewing under the arbitrary and capricious standard, "[t]he Administrator['s] decision need not be the only

logical one nor even the best one. It need only be sufficiently supported by facts within [his] knowledge to counter a claim that it was arbitrary or capricious." *Woolsey* [*v. Marion Laboratories, Inc.,*] 934 F.2d [1452] at 1460 [(10th Cir.1991)]. The decision will be upheld unless it is "not grounded on *any* reasonable basis." *Id.* (citation omitted). The reviewing court "need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end." *Vega v. National Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir.1999).

196 F.3d at 1098.

■ The plaintiff argues a conflict exists between the insurance policy which designates Aetna as an ERISA fiduciary with authority "to review all denied claims for benefits" and the summary plan description ("SPD") which designates Goodyear as the plan administrator with "the sole and absolute discretionary authority to administer" the plan, including the authority to decide "all questions relating to eligibility" for benefits. Because Goodyear denied the plaintiff's claim without submitting it to Aetna, the plaintiff maintains Aetna's failure to exercise that review authority should trigger *de novo* judicial review.

The court is not persuaded. The SPD plainly provides that Goodyear "shall have the sole and absolute discretionary authority and power to administer and carry out the provisions of the Plans, including, but not limited to, the authority and power . . . to determine all questions relating to eligibility." (Dk.37, Ex. M, p. 79). Goodyear exercised this discretionary authority in deciding that Hector Arocho had died before the effective date of coverage and by not submitting any such claim under the Optional Plan to Aetna. Though the function of reviewing denied claims may have been delegated to Aetna, Goodyear denied benefits under the Optional Plan before any claim was ever submitted to Aetna. Thus, this is not a case where the administrator did not exercise its discretionary

authority in denying benefits. Finally, the plaintiff does not articulate any conflict of interest here that would trigger a less deferential standard than arbitrary and capricious. *See Kimber,* 196 F.3d at 1097; *Jones v. Kodak Medical Assistance Plan,* 169 F.3d 1287, 1291 (10th Cir.1999).

## COUNT 1—CONTRACTUAL ENTITLEMENT TO PROCEEDS

In this count, the plaintiff alleges that Hector Arocho entered into a contract with the defendants whereby they "agreed to provide $90,000 in life insurance benefits upon Mr. Arocho's death." (Dk.14, ¶ 14). The plaintiff further alleges that Hector performed by having the premium withheld from his wages and that the defendants breached by refusing to pay the plaintiff the $90,000 in life insurance benefits.

This count, as well as the others, focus on Goodyear's notice regarding the Optional Plan that was dated July 15, 1996. Both sides key on the following critical language from that notice:

There will be an open enrollment for all active associates who are currently not enrolled for Optional Contributory Life Insurance. This open enrollment will be during the month of August with coverage to be effective on September 1, 1996. The first premium payment will not be deducted until September.

If you wish to enroll, simply complete the enclosed enrollment card and return it to your plant Human Resources representative no later than August 31, 1996.

(Dk.35, Ex. F). In denying liability under the Optional Plan, the defendant relies on the coverage effective date specifically and plainly stated in this notice. The plaintiff argues circumstances compel a different reading and application of the terms of this notice.

The plaintiff focuses primarily on the statement that the first premium would not be deducted until September. Because this date for the first deduction appears to coincide with the coverage date of September 1, the plaintiff argues that "the notice explicitly indicated that no premium would be withheld from an employee's paycheck until after the coverage had gone into effect." (Dk.37, p. 9). In support of this reading, the plaintiff refers to a letter dated June 4, 1997, from Goodyear's in-house counsel which states, in part:

The July 15th letter, which was sent from Akron to several locations, also stated that the first premium payment would not be deducted until September. That statement was not applicable to our Topeka plant which deducts premiums one month in advance. Hence, the premium deducted from Mr. Arocho's August 18, 1996 pay would have applied for the September coverage if it had gone into effect.

(Dk.37, Ex. H). The plaintiff construes this letter to mean that the Goodyear had moved up by one month everything, including coverage, relating to the Optional Plan for the Topeka Plant. The plaintiff advocates a rule of contra proferentem that would construe any ambiguities in the plan against the insurer. The plaintiff also argues that the court should enforce the contract to protect the reasonable expectations of plan participants even if those expectations are contrary to the insurer's expressed intentions. In sum, the plaintiff contends that the only reasonable interpretation of the notice was that coverage was effective for the month when the premium was first deducted. Because Hector's premium was first deducted on August 18, 1996, the plaintiff concludes Hector's Optional Plan was effective on August 1, 1996.

Courts interpret terms of the insurance policy by giving them their common and ordinary meaning as understood by a reasonable person. *Chiles v. Ceridian Corp.,* 95 F.3d 1505, 1515 (10th Cir.1996). They interpret the terms of the policy as a whole, and, if unambiguous, construe them as a matter of law. *Id.* at 1511. In their analysis of the written plan documents, both sides go no further than the terms of the notice dated July 15, 1996. Those

terms are unambiguous, and the plaintiff has not really shown otherwise. The notice plainly and clearly states that the open enrollment "will be during the month of August with coverage to be effective on September 1, 1996."

The notice does not say or indicate that those enrolling in this open period could have their coverage become effective on any date other than September 1, 1996. The notice does not say or indicate that the stated effective date of coverage for this open period is linked or connected to any event or condition. While it does say that "[t]he first premium payment will not be deducted until September" for those enrolling in this open period, the notice does not indicate that the timing of the payroll deduction period could have any effect on the effective date of coverage. The plaintiff offers no evidence of the defendants presenting documents to or otherwise representing to Hector Arocho that his Optional Plan coverage available in this enrollment period could commence or had commenced sooner than September 1, 1996.

When given their common and ordinary meaning understood by a reasonable person, the terms of the notice plainly state that coverage for those enrolling in this open period would commence on September 1, 1996. There is nothing ambiguous, unclear, conditional or indefinite about this coverage date stated in the notice. The plaintiff's arguments for a contrary reading of this plain language are devoid of merit. The court concludes as a matter of law that Hector Arocho's enrollment in the Optional Plan during this open period provided him with coverage that became effective on September 1, 1996.

The plaintiff does not present evidence from which a rational factfinder could conclude that Goodyear had moved up the effective coverage date for the Optional Plan at the Topeka plant. The letter of June 4, 1997, from Goodyear's in-house counsel expressly states that Optional Plan did not go into effect until September 1, 1996. The counsel does explain that the Topeka plant handles its payroll deductions differently in that it regularly deducts premiums one month in advance: "Hence, the premium deducted from Mr. Arocho's August 18, 1996 pay would have applied for September coverage if it had gone into effect." (Dk.37, Ex. H). This letter sustains no reasonable inference that Goodyear had moved up the coverage effective date to August 1, 1996, for the Topeka plant.

■ In a recent ERISA case, the Tenth Circuit rejected efforts to apply the doctrines of contra proferentem and reasonable expectations under similar circumstances. *Kimber v. Thiokol Corp.,* 196 F.3d at 1100–01. "We now hold that when a plan administrator has discretion to interpret the plan and the standard of review is arbitrary and capricious, the doctrine of contra proferentem is inapplicable." *Id.* at 1100. Because the standard of review here is arbitrary and capricious and the SPD gives Goodyear the discretion to resolve "questions of construction," the doctrine of contra proferentem is inapplicable. Similarly, "the reasonable expectation doctrine is inapplicable to the review of an ERISA disability benefits plan under the arbitrary and capricious standard." *Id.* at 1101; *see Pirkheim v. First UNUM Life Ins. Co.,* 50 F.Supp.2d 1018, 1026 (D.Colo.1999) (reasonable expectations doctrine is inapplicable unless the plan is ambiguous). These doctrines are not available to the plaintiff. Even if available, the doctrines would not entitle the plaintiff to recovery. The plaintiff has not shown any ambiguities triggering either doctrine. Moreover, a rational trier of fact could not find under the circumstances here that an employee or beneficiary would reasonably expect to obtain coverage on a date earlier than the specific effective date expressly stated in the notice governing this limited open enrollment opportunity for optional coverage.

■ The plaintiff cites K.S.A. 40–451(a) as pertinent here:

When an application for an individual life insurance policy and an initial premium therefor has been received by an insurance company or agent acting on behalf of such company, the coverage for which applications is made shall, subject to the limitations in subsection (b), be deemed to be temporarily in effect until the insurance company or agent has, in the event of an adverse underwriting decision, as defined in K.S.A. 40–2,111 and amendments thereto, notified in writing the applicant of such adverse underwriting decision and returned any unearned premium in accordance with K.S.A. 40–2,112 and amendments thereto.

The plaintiff summarily states: "This is a statute that regulates insurance and is thus not preempted by ERISA. *Winchester v. Prudential Life Insurance Co. of America,* 975 F.2d 1479 (10th Cir.1992)." (Dk.37, ¶.12–13). Other than this single conclusory statement, the plaintiff makes no effort to establish that this statute falls within the savings clause, 29 U.S.C. § 1144(b)(2)(A). In response, the defendant points that "the Aetna policy was issued to cover an ERISA Plan which is governed by federal not state law." The plaintiff does not respond to this point. The defendant further states that the policy contains a choice of law provision which makes the law of Ohio applicable. Citing *Ogden v. Continental Casualty Co.,* 208 Kan. 806, 494 P.2d 1169 (1972), the plaintiff responds that if an employee makes a premium payment towards a group insurance policy then a contractual relationship arises that is governed by Kansas law.

The court rejects the plaintiff's cursory attempt at applying K.S.A. 40–451(a) here. First, the plaintiff has not shown why this Kansas statute should apply to an extraterritorial insurance contract. *See Simms v. Metropolitan Life Ins. Co.,* 9 Kan. App.2d 640, 685 P.2d 321 (1984). Second, the *Ogden* decision does not speak to any choice of law issues or to an employee having contractual rights that arise from some other status or activity than being an insured contributing premiums under a group policy. Third, even assuming its applicability here, the plaintiff has made no attempt to demonstrate how this Kansas statute regulates the "business of insurance" as that phrase has been used and interpreted in the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015. *See UNUM Life Ins. Co. v. Ward,* 526 U.S. 358, 119 S.Ct. 1380, 1389–90, 143 L.Ed.2d 462 (1999); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 50, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Davies v. Centennial Life Ins. Co.,* 128 F.3d 934 (6th Cir.1997); *Gaylor v. John Hancock Mut. Life Ins. Co.,* 112 F.3d 460, 466 (10th Cir.1997); *Kelley v. Sears, Roebuck & Co.,* 882 F.2d 453, 456 (10th Cir.1989); *Gem Ins. Co. v. Edward T. Hayes Transporting, Inc.,* 958 F.Supp. 566, 570–71 (D.Utah 1997); *Davis v. John Alden Life Ins. Co.,* 746 F.Supp. 44, 48 (D.Kan.1990). Finally, the plaintiff has not presented any facts to show that Aetna or its authorized agent received an application and premium payment from Hector Arocho prior to his death. *See Strom,* 202 F.3d 138, 140.

On the record presented, there are no genuine issues of material over the reasonable meaning to be given the controlling terms of the Optional Plan. When so construed as a matter of law, the terms establish that Hector Arocho's Optional Plan coverage did not become effective until September 1, 1996. Hector died two days before his coverage became effective. Thus, the plaintiff is unable to prove that the defendants breached any terms of the Optional Plan in denying her life insurance proceeds under it. The defendants are entitled to summary judgment on count one.

## COUNT TWO—WAIVER AND ESTOPPEL

In count two, the plaintiff alleges that by not rejecting Hector's application within a reasonable period of time, by accepting the premium deducted from Hector's salary, and by not returning the premium within a reasonable period of time, the defendants have accepted Hector's application and eli-

gibility and have waived and/or are estopped from denying coverage under the Optional Plan. The plaintiff seeks the $90,000 in proceeds under the Optional Plan.

As the defendant argues, the Tenth Circuit has yet to recognize a federal common law estoppel claim under ERISA. *See, e.g., Miller v. Coastal Corp.,* 978 F.2d 622, 624–25 (10th Cir.1992), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 152 (1993); *Peckham v. Gem State Mut. of Utah,* 964 F.2d 1043, 1050 (10th Cir.1992). In *Miller,* the Tenth Circuit rejected the plaintiff's claim that the defendants should be equitably estopped from relying on the plan and denying him the retirement benefits as had been orally represented and calculated in the employee's annual statements for the last ten years. The Tenth Circuit extended the rule from *Straub v. Western Union Telegraph Co.,* 851 F.2d 1262, 1265 (10th Cir.1988), that "[a] employee benefit plan cannot be modified, ..., by informal communications, regardless of whether those communications are oral or written." *Miller,* 978 F.2d at 624. Relying on the same rule from *Straub,* the Tenth Circuit in *Peckham* likewise rejected a promissory estoppel claim based on oral representations and an estoppel by conduct claim based on dilatory conduct in the processing of an employee's request to extend medical insurance coverage. 964 F.2d at 1050–51. It is true that in recent cases the Tenth Circuit has been cautious in discussing the possibility of an equitable estoppel claim under ERISA. *See, e.g., Cannon v. Group Health Service of Oklahoma, Inc.,* 77 F.3d at 1276–77 ("This court has neither adopted nor rejected an equitable estoppel rule in the ERISA context."); *Averhart v. U.S. WEST Management Pension Plan,* 46 F.3d 1480, 1486 (10th Cir.1994). The Tenth Circuit, however, does not seem inclined to recognize an equitable estoppel claim unless the circumstances are "egregious" or "extraordinary." *Kaferly v. U.S. West Technologies,* 189 F.3d 478, 1999 WL 679682, at *9–*10 n. 8 (10th Cir. Sept.1, 1999) ("*Miller* left open the issue of whether estoppel might apply in limited, extraordinary circumstances, ..., and so do we here. Whether or not estoppel might apply in limited, extraordinary circumstances, there are no such circumstances here that require us to consider the issue.") (Table); *Miller,* 978 F.2d at 625 ("[Miller] makes no allegations of lies, fraud, or intent to deceive on the part of the [defendants]. Mr. Miller refers to the written representations simply as a 'mistake' made by the defendants. Although the mistake directly conflicted with the terms of the plan, which he suggests he never saw, he could have obtained ... the plan.").

The plaintiff here does not allege or offer evidence of any egregious or extraordinary circumstances. For that matter, a rational factfinder could not conclude from this record that the defendants had misrepresented any material fact on which either Hector or his wife reasonably and detrimentally relied. The plaintiff does not point to any ambiguities in the written plan documents as to trigger the rule stated in *Chiles.* 95 F.3d at 1519 n. 13; *see Lott v. Hertz Custom Benefit Program,* 961 F.2d 220, 1992 WL 73061, at *3 (10th Cir. Apr.9, 1992) ("Completing and returning the enrollment form, even deducting the first premium from Lott's last paycheck, can not and did not excuse the condition precedent of being actively at work....") (Table). In fact, a life insurer in an ERISA benefits plan does not waive its right to deny recovery under the terms of the group policy by mistakenly accepting premiums. *White v. Provident Life & Acc. Ins. Co.,* 114 F.3d 26, 29 (4th Cir.), *cert. denied,* 522 U.S. 950, 118 S.Ct. 369, 139 L.Ed.2d 287 (1997); *see Anderson v. Intermountain Power Service Corp.,* 198 F.3d 257, 1999 WL 824367, at *4 (10th Cir. Oct.14, 1999) (The plan's requirement for timely premium payments were not waived by accepting partial payments or by previously accepting late payments.) For the reasons discussed in the next section, the plaintiff gains no ground from labelling her estoppel and waiver claims as equitable relief available under § 502(a)(3). The plaintiff is unable to prevent summary judgment on this count.

## COUNT THREE—BREACH OF FIDU-CIARY DUTY

In count three, the plaintiff alleges the defendants breached their fiduciary duty by wrongfully refusing to pay the plaintiff the benefits under the Optional Plan. In her memorandum, the plaintiff argues this claim is proper under § 1132(a)(1)(B), § 1132(a)(2) with reference to § 1109, and § 1132(a)(3)(B). The plaintiff cannot prevail under any of these statutes.

As far as the plaintiff's claim under § 1132(a)(1)(B), the court decided in its discussion of count one that because Hector Arocho had died before the effective date of coverage Goodyear had enforced the Optional Plan by its plain and unambiguous terms in denying proceeds to the plaintiff. Consequently, for purposes of § 1132(a)(1)(B), the plaintiff is not able to prove she was denied any benefits due her under the plan.

As the defendants note, the plaintiff may not recover on her claim pursuant to § 1132(a)(2). "[T]he United States Supreme Court has held that § 1132(a)(2) does not authorize a participant or beneficiary to bring a private right of action for damages to redress a breach of fiduciary duty." *Alexander v. Anheuser–Busch Companies, Inc.*, 990 F.2d 536, 540 (10th Cir.1993) (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 138, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)); *see Walter v. International Ass'n of Machinists Pension Fund*, 949 F.2d 310, 316–17 (10th Cir.1991). The plaintiff's reply brief does not refute that her § 1132(a)(2) claim is flawed.

The plaintiff's last statutory reference for her breach of fiduciary duty claim is § 1132(a)(3) which authorizes an individual action for appropriate equitable relief. The plaintiff cites *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), as holding that § 1132(a)(3) gives plan participants or beneficiaries a private cause of action for equitable relief for breaches of fiduciary obligations. The Supreme Court, however, also limited the relief available under this section:

> Third, the statute authorizes "*appropriate*" equitable relief. We should expect that courts, in fashioning "appropriate" equitable relief, will keep in mind the "special nature and purpose of employee benefit plans," and will respect the "policy choices reflected in the inclusion of certain remedies and the exclusion of others." (citations omitted). Thus, we should expect that where Congress else where provided adequate relief for a beneficiary's injury, there will likely be no need for further relief, in which case such relief normally would not "appropriate." (citation omitted).

516 U.S. at 515, 116 S.Ct. 1065. The plaintiff's breach of fiduciary duty claim under this statute is essentially an equitable, alternative claim for the same benefits sought in count one under § 1132(a)(1)(B). Because the plaintiff has a remedy under § 1132(a)(1)(B) to recover any benefits due her as a plan beneficiary, equitable relief under § 1132(a)(3) is no longer "appropriate."

*See Klover v. Antero Healthplans*, 64 F.Supp.2d 1003, 1012–13 (D.Colo.1999); *Jones v. American Airlines, Inc.*, 57 F.Supp.2d 1224, 1236–37 (D.Wyo.1999). That the plaintiff "did not prevail on [her] § 1132(a)(1)(B) claim does not make [her] alternative claim under § 1132(a)(3) viable." *Tolson v. Avondale Industries, Inc.*, 141 F.3d 604, 610 (5th Cir.1998); *see Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1088–89 (11th Cir.1999).[1]

---

1. The court recognizes that the Second Circuit in *Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 142, 148, recently held that an employee's death prior to the effective date of supplemental insurance coverage meant that the employee was never qualified for benefits under the plan and the employee's surviving wife "cannot sue under § 1132(a)(1)(B) because there are no benefits due her under the plan." Under these circumstances, the Second Circuit said the plaintiff could bring an action under § 1132(a)(3), as equitable relief would be appropriate in the event the plaintiff could establish liability. *Id.* at 149. Because the plaintiff here did not take any other posi-

Even assuming the plaintiff could show that the only remedy available to her was this equitable relief, the defendants would still be entitled to summary judgment on this count. The plaintiff repeats her earlier arguments regarding estoppel and waiver here, and the court rejects them for the same reasons stated above. In enforcing the plan according to its explicit and plain terms, Goodyear fulfilled its fiduciary obligation of discharging its duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D); *see Averhart v. U.S. WEST Management Pension Plan*, 46 F.3d at 1489 n. 6 ("[A]s a matter of law, benefits committee did not breach fiduciary duties by denying benefits to employees who were not entitled to benefits under the terms of the plan.") (citing *Shaw v. Kruidenier*, 470 F.Supp. 1375, 1389–91 (S.D.Iowa 1979), *aff'd*, 620 F.2d 307 (8th Cir.1980) (Table)). The plaintiff offers no viable legal basis for the defendants having any fiduciary duty to act contrary to the plan under these circumstances. The defendants are entitled to summary judgment on count three.

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment (Dk.34) is granted, and the plaintiff's motion for summary judgment (Dk.36) is denied.

tion than that Hector was qualified for the Optional Plan, the court does not consider the reasoning in *Strom* pertinent. Even if the plaintiff had conceded for purposes of this alternative, equitable claim that Hector was not qualified for the Optional Plan and she could not sue under § 1132(a)(1)(B), the court would deny her relief under § 1132(a)(3) for all the other reasons stated above.