**Paul KAUS, Plaintiff,**

**v.**

**STANDARD LIFE INSURANCE COMPANY, Defendant.**

**No. 00–1022–WEB.**

United States District Court,
D. Kansas.

Nov. 20, 2001.

Norman R. Kelly, Norton, Wasserman, Jones & Kelly, Salina, KS, for plaintiff.

Terry L. Unruh, Grace, Unruh & Pratt, L.C., Wichita, KS, for defendant.

### *Memorandum and Order*

WESLEY E. BROWN, Senior District Judge.

Plaintiff Paul Kaus filed this action challenging the defendant's denial of his claim for long-term disability benefits under an employee welfare benefit plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"). The matter is now before the court on the defendant's motion for partial summary judgment. The court finds that oral argument would not assist in deciding the issues presented.

The motion for partial summary judgment concerns Count Two of plaintiff's complaint and its assertion that the defendant is barred by estoppel from denying plaintiff's claim for benefits. The estoppel claim is premised on the defendant's receipt and acceptance of disability insurance premium payments from plaintiff after the

date upon which defendant contends plaintiff's employment—and his eligibility for coverage-were terminated. The defendant seeks summary judgment on this claim, arguing that ERISA does not permit a claim for estoppel under the facts alleged.

## I. *Facts.*

### A. *Prior Litigation.*

Galichia Medical Group, P.A., established and maintained a welfare benefit plan offering long-term disability benefits for its employees, including plaintiff Paul Kaus. Plaintiff's coverage under the long-term disability plan became effective October 1, 1995. The Plan was funded by an insurance policy issued by Standard Insurance Company. *See Kaus v. Standard Insurance Company,* 985 F.Supp. 1277, 1279 (D.Kan.1997).

The Plan gives Standard full and exclusive authority to interpret and resolve questions arising in the administration, interpretation, and application of the Plan. Regarding this authority, the Plan specifically states that its authority includes, but is not limited to:

1. The right to resolve all matters when a review has been requested;

2. The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;

3. The right to determine:

a. Your eligibility for insurance;

b. Your entitlement to benefits;

c. The amount of benefits payable to you;

d. The sufficiency and the amount of information we may reasonably require to determine a., b., or c., above.

Subject to the review procedures of the Group Policy, any decision we make in the exercise of our authority is conclusive and binding.

On April 5, 1996, plaintiff applied for long-term disability benefits under the Plan, asserting that he was disabled as of February 20, 1996, due to Kallman's Syndrome and severe depression.

On July 24, 1996, Standard denied plaintiff's claim for benefits on the basis that the medical records indicated that the allegedly disabling conditions were caused or contributed to by a preexisting condition.

On September 26, 1996, plaintiff requested that Standard review its decision denying his claim for benefits, and denial of the claim was upheld by Standard on review.

Plaintiff filed suit in Federal District Court, seeking judicial review of Standard's decision. The District Court ruled that Standard's decision to deny benefits was not arbitrary and capricious, and it granted Standard's Motion for Summary Judgment. *See Kaus,* 985 F.Supp. at 1284.

In an unpublished decision dated November 5, 1998, the Tenth Circuit affirmed the District Court's ruling. *Kaus v. Standard Insurance Company,* 162 F.3d 1173 (table), 1998 WL 778055 (10th Cir.1998).

### B. *Current Litigation.*

On February 16, 1998, plaintiff submitted a second claim for long-term disability benefits under the Galichia Plan. (This is the claim at issue in the current litigation.) Plaintiff's second claim also alleged February 20, 1996, as the date his disability began.

In his February 16, 1998 claim for benefits, plaintiff set forth the following disabling conditions which he claimed prevented him from working at his occupation:

Sleep apnea; chronic fatigue syndrome resulting from sleep apnea; Kallman's Syndrome; chronic right scrotal and

pelvic pain resulting from multiple genito-urinary surgeries (penile and scrotal implants) and resultant scar tissue; liver problems; cardiac problems, including tachardia, arrhythmia, and atrial fibrillation; hemochromatosis; gynecomastia; memory loss, confusion, and stuttering resulting from multiple medications; chronic gastritis and diarrhea; phlebitis and thrombophlebitis; herniated disc at L5–S1 level; depression; steroid dependency; nonspecific personality disorder; blurred and double vision; headache and dizziness; and Barrett's disease.

Approximately two months after plaintiff filed his second claim for benefits, Standard notified plaintiff's counsel that information in plaintiff's claim file indicated that his insurance had ceased to be effective as of March 8, 1996, the last date he received compensation from Galichia. Plaintiff was told by Standard that under the terms of the group policy his insurance ceased to be effective as of March 8, 1996.

Among other requirements for being insured under the long-term disability Plan, an employee must be a Member and meet the Plan's "Active Work Provisions." A Member is defined by the policy as "An active employee of the Employer, who regularly works at least 30 hours each week, and who is a citizen or resident of the United States or Canada." "Active Work" and "Actively at Work" are defined as performing the material duties of the Member's occupation at the Employer's usual place of business. The Plan provides that insurance ends automatically on the date the employee ceases to be a Member because he or she is not working the required minimum number of hours, unless the employee is on a leave of absence approved by the Employer and scheduled to last no longer than 30 days.

On August 11, 1998, Standard denied plaintiff's long-term disability claim. As to four of the conditions which plaintiff alleged were disabling, Standard determined that these conditions were diagnosed or were otherwise incurred after plaintiff ceased to be a Member under the Plan. As to the remaining fourteen conditions, Standard denied the claim on grounds other than its assertion that plaintiff's insurance coverage had ceased.

Plaintiff requested that Standard review this denial, and the claim was again denied upon review.

Plaintiff alleges that he took a medical leave of absence from Galichia from February 21, 1996 through March 31, 1997. During this leave, he continued to pay premiums for disability coverage, and he was advised by Galichia that his position was being kept open for his return to work.

Plaintiff alleges that, while he was on medical leave of absence, Galichia considered him a full-time employee, and he considered himself to be a full-time employee as well.

In approximately June of 1998, Standard sent plaintiff a form indicating plaintiff could keep paying life insurance policy premiums and still continue as an insured under the life insurance policy.

During the time Standard was reviewing plaintiff's April 5, 1996 application for disability benefits, Standard made no attempt to advise plaintiff that he was allegedly no longer eligible for long-term disability coverage. Standard continued to accept plaintiff's disability insurance premium payments.

The Kansas Insurance Department advised plaintiff to "stand firm" because in its view Standard had accepted plaintiff as an insured, and it asserted that plaintiff was entitled to coverage up until the date he resigned his employment. The Kansas Insurance Commissioner's Office advised plaintiff that it believed Standard was not

acting in good faith. By letter dated April 27, 1999, Paul E. Donahue, CIE, ALHC, of the Kansas Insurance Department asserted:

> It was not until April 1998 that the company took the position that Mr. Kaus was no longer an eligible member of the group effective February 21, 1996 and then proceeded to issue a refund of the premiums paid after that date. As previously communicated to your company, this department seriously questions why it took the company approximately two years to make the determination that he was no longer an eligible member of the group as of February 21, 1996. The company was fully aware he was no longer working after this date as he had a pending disability claim that had been filed in March 1996.

We believe the company's decision to declare Mr. Kaus ineligible some two years after the fact is unjust, unfair and inequitable. He paid his premiums in good faith and had every reason to believe coverage would be honored. It is our opinion that it should have been.

## II. *Standards of Review.*

The standards and procedures for summary judgment are well established and will not be fully repeated here. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In essence, summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

 The standards for reviewing eligibility determinations by the plan administrator were set forth by the Tenth Circuit in addressing plaintiff's prior claim:

> A court reviewing a challenge to a denial of employee benefits under 29 U.S.C. § 1132(a)(1)(B) applies an "arbitrary and capricious" standard to a plan administrator's action if the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms. Where the plan administrator operates under a conflict of interest [by both administering and funding the plan], however, the court may weigh that conflict as a factor in determining whether the plan administrator's actions were arbitrary and capricious. *Charter Canyon Treatment Ctr. [v. Pool Co.,,* 153 F.3d 1132, 1135 (10th Cir.1998) ] (citations omitted). In applying this deferential standard of review, we focus on whether defendant's interpretation of the plan was reasonable, tempered by the potential conflict of interest inherent in defendant's concurrent funding and administration of the plan. *See id.* at 1136.

*Kaus v. Standard Insurance Co.,* 162 F.3d 1173 (Table), 1998 WL 778055, *2 (10th Cir.1998). The Tenth Circuit determined that the less deferential standard applies to review of plaintiff's claim because Standard has an inherent conflict of interest by both funding and administering the plan. *See id.*

## III. *Discussion.*

 Standard first argues that insofar as plaintiff's claim for estoppel is based upon state law, it is preempted by ERISA. The court agrees. Section 1144(a) of Title 29 provides in part that with certain exceptions ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." Plaintiff does not address the scope of ERISA preemption except to argue that his case is factually dissimilar to the cases cited by Standard. As the defendant points out, the law regarding pre-

emption of state law estoppel claims in this context[1] is clear:

> State common law claims based on the doctrine of estoppel by conduct "relate to" a benefit plan as surely as claims for promissory estoppel. Under promissory estoppel it is argued that the plan should be modified based upon oral representations of an agent of the plan whereas under estoppel by conduct it is argued that the written provisions of the plan should be overridden to do equity. These claims are therefore preempted by ERISA under the analysis of *Straub* [*v. Western Union Tel. Co.*, 851 F.2d 1262, 1265 (10th Cir.1988).]

*Peckham v. Gem State Mutual of Utah*, 964 F.2d 1043, 1051 (10th Cir.1992). *See also Arocho v. Goodyear Tire & Rubber Co.*, 88 F.Supp.2d 1175, 1178–79 (D.Kan. 2000). Accordingly, the court concludes that insofar as Count 2 is based upon the state common law of estoppel, it is preempted by ERISA.

■ Standard next argues that federal common law likewise does not permit a claim of estoppel in an action for ERISA benefits. Although several circuit courts have recognized such a claim[2], the Tenth Circuit has not done so. In fact, in *Miller v. Coastal Corp.*, 978 F.2d 622 (10th Cir. 1992), the Tenth Circuit explicitly refused to recognize a federal common law claim for estoppel and said that informal communications, even written ones, cannot modify the terms of an ERISA employee benefit plan. *Miller*, 978 F.2d at 624–25. The court left open the possibility that estoppel might be applied in "egregious" or "ex-traordinary" cases, but suggested this requires at a minimum evidence of "lies, fraud, or intent to deceive" on the part of the defendant, and that it is not satisfied where a defendant's misrepresentation was merely a mistake. *Id.* at 625. As defendant points out, cases such as *Arocho v. Goodyear Tire Co.*, 88 F.Supp.2d 1175, 1184 (D.Kan.2000) have concluded that a plan ordinarily does not waive its right to deny benefits under a group insurance policy simply by mistakenly accepting premiums. *See also White v. Provident Life & Accid. Co.*, 114 F.3d 26, 29 (4th Cir.1997) (insurer's mistaken acceptance of premiums did not support claim for estoppel); *Sippel v. Reliance Standard Life Ins. Co.*, 128 F.3d 1261 (8th Cir.1997) (rejecting estoppel claim despite receipt of premiums); *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1348 (11th Cir.1994) (acceptance of premiums insufficient without evidence of intentional wrongdoing). *Cf. Kaferly v. U.S. West Technologies*, 189 F.3d 478 (unpublished), 1999 WL 679682 (10th Cir., Sept.1, 1999) (rejecting estoppel claim). These cases reflect a desire to safeguard the fundamental premise that the right to receive ERISA benefits derives from the terms of the written plan.

Count Two of plaintiff's complaint does not allege "lies, fraud, or intent to deceive" by Standard; it simply alleges that Standard continued to accept premium payments and failed to notify plaintiff that he was not eligible under the Plan after he ceased working regular hours. Plaintiff

---

1. In contrast to the circumstances of this case, the Tenth Circuit has suggested that state law would not be preempted where an insurer's fraudulent misrepresentation as to a plan's coverage for certain procedures induced an employee to participate in the plan. *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 991 (10th Cir.1999).

2. See *e.g., Stovall v. First Unum Life Ins. Co.*, 2001 WL 1178601 (2nd.Cir., Oct.3, 2001); *Shields v. Local 705, Int'l. Brotherhood of Teamsters*, 188 F.3d 895, 901 (7th Cir.1999); *Miller v. Taylor Insulation Co.*, 39 F.3d 755, 759 (7th Cir.1994).

contends that the nearly two year delay before Standard asserted this ineligibility makes this case an extraordinary or egregious one, but in *Miller* the court rejected a claim of estoppel despite the fact that the plaintiff had received erroneous annual statements of benefits from the plan for a period of ten years. *Miller,* 978 F.2d at 623. Under the allegations and evidence cited here by plaintiff, the court concludes that plaintiff has failed to show that this is an extraordinary or egregious case. Accordingly, Standard is entitled to judgment as a matter of law on Count Two of plaintiff's complaint insofar as that count is based on the doctrine of estoppel.

■ The court rejects plaintiff's argument that he is entitled to conduct discovery relating to Standard's denial of his claim. Plaintiff has been provided the complete administrative record, including the claim files on both of plaintiff's claims for disability benefits. Notwithstanding plaintiff's conclusory affidavit asserting a need for discovery to fully develop the facts surrounding his claim for estoppel, the court concludes that no specific showing has been made as to how such discovery is essential to his allegations. Nor has any showing been made that this case warrants a departure from the general rule that the court's review is limited to the administrative record that was before the plan administrator at the time of its determination.

## IV. *Conclusion.*

Defendant Standard Insurance Company's Motion for Partial Summary Judgment (Doc. 12) is hereby GRANTED. Summary judgment is granted in favor of Standard insofar as Count Two of the complaint asserts a right to relief under the doctrine of estoppel.

IT IS SO ORDERED this day of November, 2001, at Wichita, Ks.