**Lujuan C. JOHNSON and Steven Johnson, Plaintiffs,**

v.

**LIFE INVESTORS INSURANCE COMPANY OF AMERICA, an Iowa corporation. Defendants.**

**Lujuan C. JOHNSON and Steven Johnson, Plaintiffs,**

v.

**MONUMENTAL LIFE INSURANCE COMPANY, a Maryland corporation, Defendants.**

**No. CIV. 2:96 CV 283K.**

United States District Court, D. Utah, Central Division.

March 9, 1998.

Timothy C. Houpt, Salt Lake City, UT, for Lujuan and Steven Johnson.

J. Angus Edwards, Salt Lake City, UT, for Life Investors Ins. Co. of America.

Julianne R. Branch, for Monumental Life Ins. Co.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

This matter is before the court on Defendant Life Investors Insurance Company of America's Motion for Summary Judgment; Defendant Monumental Life Insurance Company's Motion for Summary Judgment and Plaintiffs' Cross Motion for Summary Judgment. This matter came on for hearing on Wednesday February 18, 1998. Plaintiff was present and represented by Mr. Timothy C. Houpt. Defendant, Life Investors Insurance Company of America ("LICA") was represented by Mr. J. Angus Edwards and defendant Monumental Life Insurance Company ("Monumental") was represented by Ms. Julianne R. Branch. Oral argument was heard and the court took the matter under advisement. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the law and facts relevant to the parties' motions. Now being fully advised the court enters the following memorandum and order.

## I. *BACKGROUND*

Plaintiffs Lajuan Johnson is the widow and personal representative of the estate of Marvin Johnson. Plaintiff Steven Johnson is the son of Lajuan and Marvin Johnson. Plaintiffs filed a complaint on March 26, 1996, in this court, against defendant LICA, alleging that the defendant was in breach of its insurance agreement with the deceased and his beneficiaries in that defendant refused to pay death benefits that were owed under its insurance contract for accidental death. In an Order dated September 25, 1996 this matter was consolidated with *Johnson v. Monumental Life Insurance Company* on the basis that the decedent also had an accidental death policy with Monumental, Monumental had also denied death benefits to the plaintiffs, and plaintiffs had consequently filed an action against Monumental in this court. The issues in the two cases are identical and therefore consolidation was proper.

The decedent, Marvin R. Johnson purchased a policy for accidental death insurance from Monumental in 1993. LICA assumed responsibility in April of 1993 for a Certificate of Group insurance No. 122–APG1000984 issued by AMEX Life Assurance Company to the decedent Marvin Johnson, that designated Steven Johnson as the sole and primary beneficiary. The AMEX policy was originally issued in February of 1989. In December of 1989 Mr. and Mrs. Johnson completed a "request for increased benefits" form. In response to that request they received a letter in March of 1990 stating that their new quarterly premium would be $82.32 and that the charge would be placed on their American Express Card account.

Mr. Johnson was diagnosed with myotonic dystrophy in 1974 at the age of 42. Mr. Johnson was treated for this disease from 1974 until his death in 1995. He developed muscle weakness and other symptoms of the disease, however, he was able to remain relatively active up until the time of his death. Mr. Johnson did occasionally fall as a result of the myotonic dystrophy. More specifically, Mr. Johnson would sometimes stumble and fall forward due to a loss of balance. In 1991 Mr. Johnson fell forward down the stairs in his home and was treated for injuries.

In July of 1995 Mr. Johnson was carrying a tray up the stairs of his home when he fell backwards down the stairs. Mr. Johnson was home alone at the time of this fall and no one witnessed the fall. As a result of the fall Mr. Johnson suffered a cervical fracture and a possible thoracic fracture. After the fall he called his wife who was out of town. She in turn called their son Steven who came to the house to help Mr. Johnson. Mr. Johnson told his son he fell as he was carrying his dinner dishes up the stairs. Mr. Johnson was admitted to the University of Utah Hospital in the early morning hours of July 30,

1995 at which time the cervical fracture was confirmed. On August 1, 1995 Mr. Johnson began to experience indications of pneumonia. He was transferred to the care of a pulmonologist in the MICU Unit. His respiratory status continued to decline during the day due to the pneumonia. An attempt was made to intubate him to clear his lungs and assist in breathing, but the intubation was extremely difficult and delayed on account of his neck fracture. During the next day it became apparent that Mr. Johnson was unable to breath on his own and could only survive with long term mechanical ventilatory support. After discussion among family members and all of the physicians involved, the decision was made on August 2, 1995 to discontinue artificial life support measures and Mr. Johnson died that day. The death certificate, which was filled out by Dr. Edward Campbell, listed the immediate cause of death as pneumonia due to a cervical spine fracture, and the underlying cause of death as myotonic dystrophy. In the space provided for "Manner of Death," Dr Campbell marked the box labeled "Accident."

Defendants in this matter move for summary judgment on the basis that under the language of the respective policies the plaintiffs must show that the death was caused by an accident "directly and independently of all other causes" in order to recover and the plaintiffs can not meet that burden. Plaintiffs argue that defendants' motions should be denied on the basis that there is an issue of material fact as to whether or not the decedents myotonic dystrophy contributed to his death. Plaintiffs further move for summary judgment in their favor on the basis that defendants are in violation of the Utah Insurance Regulations in that they failed to comply with the mandatory disclosure requirement stating that death from sickness would be excluded under the policy. In the alternative, plaintiffs move for partial summary judgment on a number of issues which need not be reached in this decision. This matter is before the court on diversity jurisdiction pursuant to 28 U.S.C. § 1332 and, therefore, Utah law is controlling.

## II. STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir.1991).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzales v. Millers Casualty Ins. Co.*, 923 F.2d 1417, 1419 (10th Cir.1991). The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.* at 322.

In considering whether there exist genuine issues of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir.) *cert denied*, 502 U.S. 827, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991). Finally all material facts asserted by the moving party shall be deemed admitted unless specifically controverted by the opposing party. D. Utah R. 202(b)(4).

## III. DISCUSSION

The plaintiffs argue that the defendants are in violation of the Utah Insurance Regulations and therefore summary judgment should be granted in their favor. The Utah

Insurance Regulations, (the "Regulations"), are found at the Utah Administrative Code R590. Defendant LICA argues that the Regulations do not apply to it because the decedent took out the insurance policy with AMEX prior to the Regulations' enactment. LICA further argues that the Regulations only apply to disability insurance and not accidental death. Monumental also argues that the Regulations apply only to disability insurance and not to the policy at issue in this case.

The plaintiffs argue that the Regulations do apply to accidental death insurance and point to R590–126–4 which defines "Accident" or "Accidental Injury" as follows:

(a) The definition of these terms may not be more restrictive than the following: (I) injury or injuries, for which benefits are provided, means accidental bodily injury sustained by the insured person which is the direct result of an accident independent of disease or bodily infirmity or any other cause and occurs while insurance coverage is in force.

Plaintiff argues that the language of Monumental's policy is more restrictive and therefore must be limited by the definition in the Regulations. Monumental's policy reads as follows:

[W]e will pay the benefits shown on the Schedule of Benefits to your named Beneficiary, provided:

(1) Death occurs as a direct result of an Injury...

"Injury" is defined as

bodily injury caused by an accident... The Injury must be the direct cause of loss and must be independent of all other causes. The Injury must not be caused or contributed to by Sickness.

"Sickness," in turn, is defined as

an illness or disease which results in a covered loss while insurance for the Covered Person is in force under the Policy.

Although Monumental's language may be slightly more restrictive, as will be discussed in more detail below, the language in the Regulations, which is followed by the LICA

policy, does not change the outcome of this case. For purposes of this decision this court agrees that the language provided for in the Regulations is controlling.

Plaintiffs next argue that both Monumental and LICA are in violation of Insurance Regulation 590–126–6G which provides as follows:

Accident-Only Disclosure. All accident-only policies shall contain a prominent statement on the first page of the policy, or attached thereto, in either contrasting color or in boldface type at least equal to the size of type used for policy captions, as follows: "This is an Accident–Only policy, and it does not pay benefits for loss from sickness."

Monumental again argues that R590–126–6G does not apply to accidental death policies but only applies to disability insurance. In addition to this argument LICA argues that the decedent took out the accidental death policy with AMEX prior to the enactment of the Regulations and therefore the Regulations do not apply to them.

Utah Insurance Regulation 590–126, that is relied upon by the plaintiffs is entitled "Individual and Franchise Disability Insurance". Whether or not this section applies only to disability insurance or to other types of individual insurance including accidental death insurance, has never been discussed by the Utah courts. The plaintiffs cite cases from other jurisdictions which apply insurance regulations in finding that companies failed to comply with disclosures. In looking at the plain language of the Regulations it appears that the Utah Insurance Regulations do apply to accidental death policies. This court interprets the title of the section to apply to both individual insurance **and** franchise disability insurance. Individual insurance would include accidental death insurance.[1] This interpretation is supported by the fact that "accidental death" is referred to numerous time throughout R590–126. Regulation 590–126–4M discusses "Accident Benefits"; R126–7H & I (1) defines "Accident Only Coverage" and "Specified Accident Cov-

---

1. Although Mr. Johnson's policies with Monumental and LICA were group policies, R590– 126–2 provides that group insurance marketed to individuals shall be subject to this rule.

erage" which specifically discusses accidental death. It seems clear that the Regulations were implemented with the intent to cover insurance policies for accidental death, therefore this court finds that Monumental is bound by the Utah Insurance Regulations.

■ LICA argues that the Regulations should not apply to its policy because AMEX sold the policy to Mr. Johnson prior to the enactment of the Regulations. Mr. Johnson bought his original policy from AMEX in February of 1989. The Regulations were enacted June 20, 1989. As is stated above, Mr. Johnson increased his benefits in December of 1989 after the enactment of the Regulations. This court agrees with the plaintiffs that the increase in benefits represents additional coverage and is viewed as a new policy. Therefore the Utah Insurance Regulations also apply to LICA.

■ Neither the Monumental, nor the LICA policy provided a disclosure as is required in R590–126–6G. Neither policy contained either color or boldface type which provided that "This is an Accident–Only policy, and it does not pay benefits for loss from sickness". Both Monumental and LICA are clearly in violation of the Utah Insurance Regulations. Unfortunately, this fact alone does not aide the plaintiffs in their attempt to recover under the policies. There is not any provision in the Utah Insurance Regulations that provides for a private right of action in the case of a violation. Regulation 590–126–10 is entitled "Penalties" and provides that:

> Persons found, after hearing or other acceptable process, to be in violation of this rule shall be subject to penalties as provided under Section 31A–2–308, Utah Code Annotated.

Section 31A–2–308(1)(a) provides that:

> A person who violates any insurance statute or rule or any order issued under Subsection 31A–2–201(4) shall forfeit to the state twice the amount of any profit gained from the violation, in addition to any other forfeiture or penalty imposed.

Neither this section, nor Utah case law provides for any type of private action in the case of a violation, nor do they provide for any private remedy. For that reason, even though the defendants are in violation of the Insurance Regulations, this alone does not provide a means of recovery for the plaintiffs.

■ Plaintiffs argue that this court should treat a violation of the Regulations as a breach of contract and further that the defendants should be estopped from relying on the exclusion in the policies. Plaintiffs cite *General Motors Acceptance Corporation v. Martinez*, 668 P.2d 498 (Utah 1983) for this proposition. In *General Motors* the insurance company was estopped from relying on an exclusion which denied coverage for disability insurance when the insured had a preexisting condition. The insured, who suffered from high blood pressure, became disabled shortly after taking out a policy for disability insurance. Coverage was denied because of the pre-existing condition. In holding that the insurance company was estopped from relying on the exclusion, the Court held that estoppel was appropriate because at no time had the insurance agent inquired as to the status of the insured's health; the insured had not signed or received an application for insurance or a certificate of insurance; and the insured had relied on representations by the insurance company that he was insured. It appears from the record before us that at no time was Mr. Johnson ever questioned about his health at the time he applied for these policies. Further, he was not required to undergo any type of physical examination, nor was he ever required to sign an actual copy of either of the policies which included the exclusion. He relied on representations from the companies that he was insured. Although it is unclear from the record whether or not Mr. Johnson actually received copies of the certificates of insurance from either Monumental or LICA, in reviewing the certificates, even if he did receive copies, the language of the exclusion is buried in both of the policies. Page two of Monumental's Certificate of Insurance lists twelve exclusions which do not include an exclusion for an accident contributed to by illness. The closest exclusion is exclusion number (5) which states that benefits will not be paid for "sickness or its medical or surgical treatment,

including diagnosis." This certainly does not make it clear that an accident contributed to by illness would not be covered. The definition of injury in the policy, as is cited above, does state that the injury must be the direct cause of loss and must be independent of all other causes, however, as is also stated above, this is not in bold or color typeface as is required by the Regulations, nor is the language necessarily clear to a layman.

LICA's Certificate of Insurance states on page five that:

"Covered accidental injury" means a bodily injury-

— caused directly by an accident, independent of all other causes, and

— sustained by an individual who was a covered person at the time of the accident.

This language is not in bold or color typeface as is required by the Regulations and it is buried on page five of the policy. There is no reason that a layman would understand from this policy that an accident contributed to by a pre-existing illness would not be covered under the policy.

Defendants argue that the manner in which this policy was issued, which did not include a physical examination or questions about pre-existing illness is standard in the industry. This may be so, however, as the court stated in *General Motors*, "Martinez had not worked in the insurance industry and could hardly have known what was standard in the industry." Mr. Johnson also had not worked in the industry and could not possibly know what was standard. Mr. Johnson had suffered from myotonic dystrophy for many years prior to applying for coverage from these defendants. It would follow from the fact that the defendants never questioned him about his health history, that Mr. Johnson would believe that his illness was not relevant under the policy.

Although *General Motors* was decided before the implementation of the Regulations, that court does refer to the Model Act for the Regulation of Credit Life Insurance and Credit Accident and Health Insurance which was in place at the time. The Model Act required, as do the current Regulations, that the policy must state the "term and coverage including any exceptions, limitations and restrictions". *Id.* at 500. If anything, the current Regulations, require even more, in that the disclosure must be in bold or color typeface.

This court finds that the Insurance Regulations do apply to accidental death insurance policies. The defendants in this matter are clearly in violation of R590–126–6G in that they did not properly disclose as required by the Regulations that there was an exclusion for accidents contributed to by illness. Mr. Johnson relied on the fact that he had insurance policies with both of these companies and he undisputedly had an accident that resulted in his death. Therefore, Monumental and LICA are now estopped from denying him coverage under the policies. Based on these findings this court need not address whether or not the Tenth Circuit case of *Winchester v. Prudential Life Insurance Company of America*, 975 F.2d 1479 (10th Cir.1992), applies to the case at hand due to the fact that in the *Winchester* case improper disclosure in violation of the regulations was not an issue. Based on these findings it is hereby

ORDERED that Defendant Monumental's Motion for Summary Judgment is DENIED; LICA's Motion for Summary Judgment is DENIED, and Plaintiffs' Motion for Summary Judgment is GRANTED.