**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 10 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

SANDY CALLERY,

      Plaintiff - Appellant,

vs.

THE UNITED STATES LIFE
INSURANCE COMPANY IN THE
CITY OF NEW YORK; JB'S
RESTAURANTS, INC.; JB'S
FAMILY RESTAURANTS; STAR
BUFFET,

      Defendants - Appellees.

------------------

AARP; SECRETARY OF LABOR,

      Amici Curiae.

No. 03-4097

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 02-CV-524-C)

---

Brian S. King, Salt Lake City, Utah, for Plaintiff - Appellant.

W. Mark Gavre, Parsons, Behle & Latimer, Salt Lake City, Utah, for Defendants -
Appellees.

Karen L. Handorf, Deputy Associate Solicitor, (and Elizabeth Hopkins, Counsel
for Appellate and Special Litigation Plans Benefits Security Division, with her on

the brief, Howard M. Radzely, Acting Solicitor of Labor, Timothy D. Hauser, Associate Solicitor, and Adrienne K. Dwyer, Trial Attorney, Plan Benefits Security Division, on the brief), Office of the Solicitor, Plans Benefits Security Division, Washington, D.C., for Amicus Curiae.

Mary Ellen Signorille, (and Melvin R. Radowitz, on the brief), AARP Foundation, Washington, D.C., for Amicus Curiae AARP.

---

Before **KELLY**, **HOLLOWAY**, and **LUCERO**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Plaintiff-Appellant Sandy Callery appeals from a judgment on the pleadings in favor of Defendant-Appellee Star Buffet. The district court held that the monetary award sought by Ms. Callery did not constitute "appropriate equitable relief" under § 502(a)(3) of ERISA. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.


## Background

In 1994, Plaintiff-Appellant Sandy Callery filled out an application for life insurance with The United States Life Insurance Company in the City of New York. ("U.S. Life"). The group insurance was sponsored by her employer. In addition to her own coverage and coverage for children, she selected "Life insurance for spouse" in the amount of $100,000. On August 29, 1997, Mr. and Mrs. Callery divorced, but she continued to pay life insurance premiums for Mr.

- 2 -

Callery's coverage until his death on February 28, 2000. Ms. Callery applied for the benefits, and U.S. Life denied coverage based upon a policy exclusion providing for termination of a spouse's eligibility for life insurance upon divorce. U.S. Life provided her a copy of the policy, and refunded the premiums she had paid.

Ms. Callery filed suit against U.S. Life and her employers, J.B.'s Restaurants, Inc., J.B.'s Family Restaurants, Inc., and Star Buffet, Inc., claiming that Defendants violated ERISA's notice requirements, 29 U.S.C. § 1021, and breached their fiduciary duties, Id. § 1104(a)(1), by failing to provide her copy of the summary plan description ("SPD"). Aplt. App. 8-9. Her complaint sought a judgment in her favor of $100,000, plus prejudgment interest, and attorney's fees and costs, though one claim referred to this relief as "equitable relief." Id. at 9. As the litigation progressed, it became clear that Ms. Callery sought a remedy under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), contending that "appropriate equitable relief" would include the face value of the life insurance policy.

Following dismissal of all other defendants without prejudice, Star Buffet moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), arguing "appropriate equitable relief" under § 502(a)(3) does not include the payment of $100,000, which would be the equivalent of the life insurance proceeds. In an oral ruling followed by a summary order, the district court granted the motion.

- 3 -

Ms. Callery now appeals.

Discussion

We review the district court's grant of judgment on the pleadings pursuant to Rule 12(c) under the same standard of review applicable to a Rule 12(b)(6) motion. Ramirez v. Dep't of Corr., 222 F.3d 1238, 1240 (10th Cir. 2000). Thus review is de novo, applying the same standard as the district court. Id. All well-pleaded allegations in the complaint are accepted as true and construed in the light most favorable to the plaintiff. Id. A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Section 502 authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). The only issue is whether ERISA's limitation of remedies to "appropriate equitable relief" allows monetary relief in these circumstances.

A. Appropriate Equitable Relief

The Supreme Court has addressed the meaning of "appropriate equitable

relief" under § 502(a)(3) in several opinions, including Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 209-21 (2002), and Mertens v. Hewitt Associates, 508 U.S. 248, 251-63 (1993). In both cases, the Court unequivocally rejected attempts to impose personal liability for a contractual obligation to pay money under § 502(a)(3), holding that the term "equitable relief" in § 502(a)(3) refers to "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." Mertens, 508 U.S. at 256; see also Great-West, 534 U.S. at 210.

In Mertens, a class of former steel industry employees participating in a qualified pension plan brought suit against a non-fiduciary, seeking monetary relief under § 502(a)(3). Mertens, 508 U.S. at 250. The Court concluded that although the employees "often dance around the word, what [they] in fact seek is nothing other than compensatory damages" in the form of monetary relief for damages resulting from the alleged breach of fiduciary duty. Id. at 255. "Money damages are, of course, the classic form of legal relief." Id.

In Great-West, the Court further elaborated on the meaning of "appropriate equitable relief." In that case, Great-West provided coverage to the defendant-beneficiary, who was severely injured in a car accident, pursuant to a plan that included a reimbursement provision. Great-West, 534 U.S. at 207. Great-West

sought to recover monies paid by a third party to the beneficiary under the reimbursement provision through § 502(a)(3). Id. at 208. The Court rejected its claim, holding that Great-West was merely seeking, "in essence, to impose personal liability on respondents for a contractual obligation to pay money -- relief that was not typically available in equity." Id. at 210. Reaffirming its previous holding in Mertens, the Court stated that "we rejected a reading of the statute that would extend the relief obtainable under § 502(a)(3) to whatever relief a court of equity is empowered to provide in the particular case at issue (which could include legal remedies that would otherwise be beyond the scope of the equity court's authority)." Id. (citing Mertens, 508 U.S. at 257-58). The Court specifically rejected the argument that the monetary payment sought was equitable relief, stating that "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." Id. at 210-11.

The Tenth Circuit has followed this reasoning, concluding that generally "monetary compensation for economic or other harm" is unavailable under ERISA. Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1234 (10th Cir. 2002); see also Millsap v. McDonnell Douglas Corp., 368 F.3d 1246, 1251-54 (10th Cir. 2004) (concluding that back pay was appropriately classified as legal relief).

- 6 -

In her complaint, Ms. Callery seeks "payment of insurance on the life of John Callery in the amount of $100,000" and "equitable relief providing for payment of the insurance on the life of John Callery." Aplt. App. 8-9. In her opposition to the Rule 12(c) motion, she is more specific. She asks the court "to enjoin the defendants from not paying her the life insurance benefits." Aplt. App. 69. In the alternative, she seeks "an order estopping Defendant's from denying" the claim. Id. at 70. She also claims that equitable remedies such as constructive trust or equitable lien might be appropriate, as well as restitution or specific performance. Id. at 70, 74.

Ms. Callery necessarily avoids the term "compensatory damages." As the Court explained, "[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty. And [m]oney damages are, of course, the classic form of *legal* relief." Great-West, 534 U.S. at 210 (internal citations and quotations omitted) (emphasis in original).

To the extent Ms. Callery seeks payment of the policy proceeds, such relief is barred under § 502(a)(3). To the extent she seeks injunctive relief compelling the payment of the policy proceeds, Ms. Callery has dismissed the insurance

company from the case and has not alleged that her situation satisfies the limitations placed upon the grant of injunctive relief in equity. Great-West, 534 U.S. at 211 n.1. Ms. Callery's claim might be most accurately construed as one for reliance damages, because she claims that the lack of notice prevented her from obtaining life insurance on her former husband from another source. Included in the record is Ms. Callery's affidavit suggesting an insurable interest-- her former husband provided child support for their children. Aplee. App. 20-21. Regardless, such relief is compensatory and not typically available in equity. Dan B. Dobbs, Law of Remedies §12.3(1), at 50; see also Caffey v. UNUM Life Ins. Co., 302 F.3d 576, 583 (6th Cir. 2002).

In the alternative, Ms. Callery argues that following Mertens and Great-West, numerous courts continue to allow monetary relief under § 502(a)(3). She relies upon Administrative Committee of Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Varco, 338 F.3d 680, 687-88 (7th Cir. 2003) and In re Carpenter, No. 00-2348, 2002 WL 1162277, at *1-2 (4th Cir. June 3, 2002). These cases merely reflect that awards of equitable restitution damages are still permitted under the Supreme Court's decisions. In Great-West, the Court stated that restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, was typically available in equity and therefore is an appropriate equitable remedy. 534 U.S. at 213. Such restitution is limited to situations where

the money or property can be "traced to particular funds or property in the defendant's possession." Id.

Ms. Callery, however, is not seeking to regain particular funds or property. She argues that the full amount of the insurance policy *is* the appropriate award of restitution damages under equitable principles. However, restitution recoveries are based upon a defendant's gain, not on a plaintiff loss. Great-West, 534 U.S. at 229 (Ginsburg, J., dissenting). Using this approach, restitution damages might equal the premiums paid by Ms. Callery to Star Buffet (ignoring that these amounts were probably forwarded to U.S. Life), rather than the face amount of the policy (the loss to Ms. Callery). These cases simply do not support full compensatory damages, as she requests. In fact, Ms. Callery has already been refunded the premium payments made after her divorce; she has thus already received restitution damages.

Next, Ms. Callery argues that the Supreme Court's decision in Varity Corp. v. Howe, 516 U.S. 489 (1996), supports her claim. In Varity, the issue before the Court was whether individual beneficiaries harmed by an administrator's breach of fiduciary obligations may bring suit. 516 U.S. at 492. Importantly, the issue of whether the relief sought, namely reinstatement, was equitable was conceded and not before the Court. Id. at 508. Nevertheless, Ms. Callery argues that the real benefit conveyed was not reimbursement, but rather the monetary benefit

associated with reinstatement to a solvent plan. However, Ms. Callery never sought relief in the form of reinstatement. In any event, even if the insurance company was still a party and we were to "reinstate" Ms. Callery to the policy, this, like specific performance of the contract, would entitle her to exercise the contract. The terms of the contract, of course, do not entitle her to payment, because they exclude coverage of former spouses. Accordingly, Ms. Callery's claim for full payment of the face value of the policy is not analogous to Varity, in which the plaintiffs sought reinstatement in the plan in question.

Ms. Callery's second argument involving Varity is based on the Court's statement that § 502 of ERISA is a "'catchall' provision[ that] act[s] as a safety net, offering appropriate equitable relief for injuries . . . not elsewhere adequately remed[ied]." Id. at 512. Relying on Varity, she argues that "there is no reason to believe Congress would want to immunize breaches of ERISA's statutory requirements that result in great harm to beneficiaries by denying those beneficiaries any remedy." Aplt. Br. at 28.

An identical argument was rejected by the Supreme Court in Mertens, where the Court stated that "vague notions of a statute's 'basic purpose' are nonetheless inadequate to overcome the words of its text regarding the specific issue under consideration," especially considering the complex and detailed structure of ERISA. 508 U.S. at 261-62; see also Great-West, 534 U.S. at 220-21

(rejecting the same argument); Millsap, 368 F.3d at 1259 (rejecting the same argument).

Ms. Callery also argues that if she "has no remedy for the undisputed violations of ERISA, the Defendants may ignore ERISA's requirements with impunity." Aplt. Br. at 28. But Ms. Callery *has* a remedy under ERISA; under § 502(a)(3) she is entitled to "appropriate equitable relief." Though the equitable relief she might obtain (i.e. plan compliance with notice requirements in the future or premium returns) would not be as attractive as compensatory damages, the limitation of remedy is the product of the statute and we must enforce it.

Next, Ms. Callery argues that the Tenth Circuit has provided equitable remedies under § 502(a)(3) in order to allow monetary relief in past cases, citing Downie v. Independent Drivers Ass'n Pension Plan, 934 F.2d 1168 (10th Cir. 1991). In Downie, the court used its equitable powers to restore the parties to their original positions in order to affect the beneficiary's ability to receive future payments. Id. at 1170-71. This is a clear equitable remedy and is distinct from the relief sought in this case.[1]

---

[1] Within this argument, Ms. Callery also cites numerous other cases, which do not address the issue of appropriate equitable relief under § 502(a)(3) and are therefore inapposite. See Horn v. Cendant Operations, Inc., No. 01-5205, 2003 WL 21513210, at *7 (10th Cir. July 3, 2003); Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co., 130 F.3d 950 (10th Cir. 1997); Bartlett v. Martin Marietta Operations Support Inc. Life Ins. Plan, 38 F.3d 514 (10th Cir. 1994).

Ms. Callery also asserts that her claim is distinguishable because this case involves an aleatory contract - one that was dependent upon some fortuitous event that was beyond the control of the parties involved. Restatement (Second) of Contracts § 232 cmt. c (1981). Ms. Callery asserts that with regard to aleatory contracts, the Restatement supports allowing the beneficiary to reach the profits or unjust enrichment realized by the breaching party. The Restatement merely recognizes the rule that a beneficiary may reach any profits resulting from wrongful disposition of trust property by the trustee, even if the transaction was one that involved a great risk of loss or possibility of profit. Restatement (Second) of Trusts § 202 cmt. c. Ms. Callery is not attempting to reach profits realized by Star Buffet through improper use of her premiums, and thus this section of the Restatement does not support her case.

Ms. Callery's final argument is that other equitable relief traditionally available at common law would be appropriate in this case, including equitable estoppel, accounting for profits, and reformation. Although other circuits have recognized equitable estoppel in limited circumstances in the context of ERISA, the Tenth Circuit has not done so. Miller v. Coastal Corp., 978 F.2d 622, 625 (10th Cir. 1992); see also Kaus v. Standard Life Ins. Co., 176 F. Supp. 2d 1193,

1198-99 (D. Kan. 2001).[2] Miller left open the possibility that estoppel might be applied in "egregious" cases, 978 F.2d at 625, but Ms. Callery has not alleged such circumstances (lies, fraud or an intent to deceive) in this case. With regard to Ms. Callery's claims for accounting for profits and reformation, Ms. Callery did not assert these arguments before the district court. New arguments presented for the first time on appeal are not properly before the court and, absent extraordinary circumstances, will not be considered. McDonald v. Kinder-Morgan, Inc., 287 F.3d 992, 999 (10th Cir. 2002).

B.  Suit Against a Fiduciary for Breach of Fiduciary Duty

Ms. Callery, and amici Secretary of Labor and AARP, assert that the limited availability of monetary damages in Mertens and Great-West is inapplicable in this case because those cases involved contract breaches by non-fiduciaries, rather than a claim against a fiduciary for a breach of fiduciary duty. Ms. Callery asserts that the monetary relief she seeks was typically available in equity for a breach of fiduciary duty. Eaves v. Penn, 587 F.2d 453, 462 (10th Cir. 1978) ("Traditional trust law provides for broad and flexible equitable remedies in cases involving breaches of fiduciary duty."). In a breach of trust action

_____

[2] Ms. Callery cites Johnson v. Life Investors Insurance Co. of America, 996 F. Supp. 1105 (D. Utah 1998) for the proposition that the Tenth Circuit recognizes equitable estoppel. However, that case dealt with the Utah Insurance Regulations, not ERISA. Id. at 1107.

- 13 -

against a trustee, monetary relief may be awarded based on any losses to the trust or gains by the trustee as a result of the breach.  See Restatement (Second) of Trusts § 205.  Thus, Ms. Callery and amici assert that "the remedies of the beneficiary against the trustee are exclusively equitable."  Restatement (Second) of Trusts § 197.  This issue has never been squarely addressed by the Tenth Circuit.

Ms. Callery argues that decisions in other circuits support her conclusion.  In Bowerman v. Wal-Mart Stores, Inc., 226 F.3d 574, 592 (7th Cir. 2000), the court found that Wal-Mart breached its fiduciary duty by failing to adequately explain plan coverage and limitations.  The Seventh Circuit awarded the "equitable remedy of restitution," in the form of reinstatement in the plan, id., totally dissimilar to the relief sought here.  In Strom v. Goldman, Sachs & Co., 202 F.3d 138, 143 (2d Cir. 1999), decided prior to Great-West, the plaintiff sought the amount of money she would have received had the alleged breach of fiduciary duty not resulted in the insurance becoming ineffective by the time of her husband's death.  The court noted that such claims "have lain at the heart of equitable jurisdiction from time immemorial."  Id. at 144.  Thus, the court allowed "make-whole" damages under § 502(a)(3), concluding that the remedy was typically available in equity because "plaintiff's claim is based on the alleged breach of a fiduciary duty, a claim that has always been within the exclusive

- 14 -

jurisdiction of equity." Id. at 145.

As noted above, the Supreme Court has rejected this broad definition of "equitable remedy" as any remedy that a court of equity could grant in favor of those categories of relief that were *typically* available in equity. Great-West, 534 U.S. at 219 (rejecting the argument that "the common law of trusts provides petitioners with equitable remedies that allow them to bring this action under § 502(a)(3)").

Importantly, the cases relied upon by Ms. Callery were decided before Great-West, and courts have since questioned their continuing validity in light of that decision. Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 110 n.8 (1st Cir. 2002) (stating that it is unclear whether Bowerman's reasoning that reinstatement is equitable is still valid); Kishter v. Principal Life Ins. Co., 186 F. Supp. 2d 438, 445 (S.D.N.Y. 2002) (stating that "the Second Circuit's reasoning in Strom has been superseded by Great-West Life"). While the arguments of amici that we should look to the common law of trusts and award monetary damages pursuant to an equitable breach of trust by a fiduciary may have been compelling before Great-West, they are not so now.

Further, other courts have rejected the distinction made in Strom and Bowerman based on the status of the defendant as a fiduciary. For example, in McLeod v. Oregon Lithoprint Inc., 102 F.3d 376, 378 (9th Cir. 1996), the

- 15 -

beneficiary asserted that <u>Mertens</u> did not control because it dealt with the availability of monetary relief against a *nonfiduciary*. The court stated, "the status of the defendant, whether fiduciary or nonfiduciary, does not affect the question of whether damages constitute 'appropriate equitable relief' under § 502(a)(3)." <u>Id.</u> at 378. The court concluded that monetary damages equal to the benefits the beneficiary would have received but for the fiduciary's breach constituted legal relief unavailable under § 502(a)(3). <u>Id.</u>

Similarly, in <u>Rego v. Westvaco Corp.</u>, 319 F.3d 140, 144-46 (4th Cir. 2003), Rego requested an order of specific performance requiring defendants to issue him stock in compensation for their breach of fiduciary duty. After the district court determined the claim was not equitable, he argued, on appeal, that at common law, actions for breach of fiduciary duty could only be brought in equity. <u>Id.</u> at 145. After considering <u>Mertens</u> and <u>Great-West</u> and finding that the Supreme Court had "squarely rejected" the argument, the court stated that "the relevant question is not whether a given type of case would have been brought in a court of equity, but whether a given type of relief was available in equity courts as a general rule." <u>Id.</u> Ultimately, the court refused to award monetary damages as equitable relief under § 502(a)(3). <u>Id.</u>; <u>see also</u> <u>Crosby v. Bowater Inc. Ret. Plan for Salaried Employees of Great N. Paper Inc.</u>, 382 F.3d 587, 596 (6th Cir. 2004) (rejecting plaintiff's argument that money damages should be awarded

because the suit is by a beneficiary against a fiduciary, as "explicitly rejected" in Great-West); Helfrich v. PNC Bank, Ky., Inc., 267 F.3d 477, 482-83 (6th Cir. 2001) ("ERISA does not permit plan beneficiaries to claim money damages from plan fiduciaries."); Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 945 (8th Cir. 1999) (determining that a claim for monetary relief for losses as a result of breach of fiduciary duty was a claim for compensatory damages not constituting equitable relief); Rogers v. Hartford Life & Accident Ins. Co., 167 F.3d 933, 944 (5th Cir. 1999) (noting "the Supreme Court firmly closed this door" on the recovery of compensatory damages under § 502(a)(3)); Armstrong v. Jefferson Smurfit Corp., 30 F.3d 11, 13 (1st Cir. 1994) (stating that "the status of the defendant (i.e., fiduciary or nonfiduciary) does not affect the question of whether compensatory legal damages constitute 'appropriate equitable relief'").

Though the issue is close, we must adhere to the Supreme Court's rather emphatic guidance and therefore conclude that in a suit by a beneficiary against a fiduciary, the beneficiary may not be awarded compensatory damages as "appropriate equitable relief" under § 502(a)(3) of ERISA.

AFFIRMED.