400 F.3d 593
 Charles CALHOON; Heidi Calhoon; Stephen Calhoon, a minor by and through his Guardian; Olivia Calhoon, a minor by and through her Guardian, Plaintiffs/Appellants,
v.
TRANS WORLD AIRLINES, INC.; Aetna Insurance Agency, Inc., Defendants,
The Taben Group, L.C., Defendant/Appellee.
 No. 04-2070.
 United States Court of Appeals, Eighth Circuit.
 Submitted: January 12, 2005.
 Filed: March 9, 2005.
 
 COPYRIGHT MATERIAL OMITTED James P. Bick, Jr., argued, Clayton, Missouri (Adam R. Lorenz on the brief), for appellant.
 Jack W. Green, Jr., argued, Kansas City, Missouri (Joseph R. Roper on the brief), for appellee.
 Before WOLLMAN, McMILLIAN, and FAGG, Circuit Judges.
 WOLLMAN, Circuit Judge.
 
 
 1
 Charles Calhoon and the members of his family appeal from the district court's[1] order that concluded that the relief the Calhoons seek is not "other appropriate equitable relief" within the meaning of section 502(a)(3) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(3)(B), and dismissed the claim with prejudice. We affirm.
 
 I.
 
 2
 Calhoon worked for Trans World Airlines, Inc. (TWA) for several years while living in Alton, Illinois, with his wife and two children. In October 1997, Calhoon's wife, children and mother were involved in a serious car accident that resulted in severe injuries to Calhoon's son, who remained in a coma for several months. Calhoon left his job with TWA and moved his family to Colorado in May 2000. He intended to purchase continuing health coverage for his family with TWA's continuation health benefits program, governed by the Consolidated Omnibus Budget Reconciliation Act (COBRA) and ERISA. The Taben Group, L.C. (Taben), an employee benefits consulting firm hired by TWA to administer its COBRA program, sent Calhoon documents for continuation coverage enrollment the month after his employment ended. Although the package was sent to the Calhoons' former Illinois address, it was forwarded to their address in Colorado. Calhoon contacted Taben, made the first payment, and informed a Taben representative by telephone of his new address. He never received additional payment coupons, which were still sent to his former address, and he failed to pay the additional premiums to continue coverage. The coverage was then cancelled and, unaware of the default, the family accumulated substantial medical bills.
 
 
 3
 The Calhoons filed a complaint in district court against TWA, Aetna Life Insurance Company, Inc. (the company that provided claims processing services for the TWA plans), and Taben, seeking reimbursement for the medical bills and costs that would have been covered by the COBRA plan had their participation not been terminated, less the applicable premiums that the Calhoons would have paid. After a delay due to the bankruptcy and dissolution of TWA and its benefits plans, the district court addressed the remaining claims against Aetna and Taben. The court noted that, because the Calhoons were no longer members of the plan, their only avenue for relief was to pursue equitable relief under 29 U.S.C. § 1132(a)(3). D. Ct. Order of Jan. 5, 2004, at 10. The court granted summary judgment for Aetna on all claims, finding that it was neither the plan nor a plan administrator and was not involved in the cancellation of the Calhoons' COBRA benefits. Id. at 11. The court allowed the plaintiffs to proceed to trial against Taben, an ERISA fiduciary, for equitable relief under 29 U.S.C. § 1132(a)(3)(B). Id. After a bench trial, the district court concluded that the Calhoons could not recover under ERISA because the relief they sought was not "appropriate equitable relief" within the meaning of section 1132(a)(3)(B). D. Ct. Order of Mar. 26, 2004, at 5. The district court then dismissed with prejudice the claim against Taben. Id. at 6.
 
 II.
 
 4
 The Calhoons assert that the restitution of medical bills and costs that they seek constitutes "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3)(B). They claim that they will be "made whole" only if they receive the benefits that would have been paid under the plan if not for the claimed breach of fiduciary duty. We review de novo issues involving the interpretation of ERISA. Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1006 (8th Cir.2004). We conclude that the Calhoons' claim for monetary relief is precluded by Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002).
 
 
 5
 Beneficiaries of ERISA plans may sue for breaches of fiduciary duties under 29 U.S.C. § 1132(a)(3), but the remedies they may seek in such an action are limited by the language of the statute to traditionally available equitable remedies. Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 944 (8th Cir.1999). The remedy of restitution may be either legal or equitable, depending on "`the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." Id. at 213, 122 S.Ct. 708 (quoting Reich v. Continental Casualty Co., 33 F.3d 754, 756 (7th Cir.1994) (alteration in original)).
 
 
 6
 Monetary relief in the form of restitution may be considered equitable only if it "seek[s] not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." Great-West, 534 U.S. at 214, 122 S.Ct. 708. Constructive trusts and equitable liens are the most common forms of restitution in equity. Id. at 213, 122 S.Ct. 708. Monetary damages that are compensatory in nature are traditionally considered to be legal relief because they "focus on the plaintiff's losses and seek to recover in money the value of the harm done" to the plaintiff instead of punishing "the wrongdoer by taking his ill-gotten gains." Kerr, 184 F.3d at 944; see also Callery v. United States Life Ins. Co., 392 F.3d 401, 406 (10th Cir.2004).
 
 
 7
 In determining whether the nature of the monetary relief sought is equitable or legal, we ask whether the value of the harm done that forms the basis for the damages is measured by the loss to the plaintiff or the gain to the defendant, see Kerr, 184 F.3d at 944, and whether the money sought is specifically identifiable "as belonging in good conscience to the plaintiff" and can "clearly be traced to particular funds or property in the defendant's possession." Great-West, 534 U.S. at 213, 122 S.Ct. 708.
 
 
 8
 Specific funds are traceable when one party overpays and sues under ERISA to recover the specific amount that was overpaid into a particular account. N. Am. Coal Corp. Ret. Sav. Plan v. Roth, 395 F.3d 916, 917 (8th Cir.2005) (per curiam); but see Rego v. Westvaco Corp., 319 F.3d 140, 145 (4th Cir.2003) (noting that, although the plaintiff received a lower asset valuation because he was paid his share of the savings plan on a different date than requested, no clearly traceable funds remained in the defendants' possession). When funds are traceable, the district court must limit the recovery by imposing a constructive trust over only the transferred funds; it may not award "restitution of a sum certain" or find personal liability, both of which are impermissible legal remedies under section 1132(a)(3). Roth, 395 F.3d at 917; see also Great-West, 534 U.S. at 213-14, 122 S.Ct. 708 (noting that if the property traceable to the plaintiff has been dissipated, only a legal claim of a general creditor remains).
 
 
 9
 We have also allowed the recovery of interest on wrongfully delayed benefits under an ERISA plan as equitable restitution because it serves to "disgorge any profits made by breaching" a fiduciary duty. Parke, 368 F.3d at 1008. Such relief constitutes the traditional equitable remedy of "accounting for profits" because it serves the purpose of preventing undue profit, not compensating the plaintiff. Id. at 1009; see also Great-West, 534 U.S. at 214 n. 2, 122 S.Ct. 708 (noting that an "accounting for profits" is a limited exception to the requirement that equitable restitution seek to restore particular funds or property to the plaintiff). In addition, particular types of monetary relief may occasionally be "made part of an equitable remedy" such as an injunction or reinstatement, although "a freestanding claim" for the same monetary relief would constitute legal relief. See Great-West, 534 U.S. at 218 n. 4, 122 S.Ct. 708 (rejecting a characterization of backpay itself as equitable restitution independent from the equitable relief of reinstatement); Kerr, 184 F.3d at 944 (noting that monetary relief had been included "as a corollary to the injunction" only).
 
 
 10
 The Calhoons assert that the reasoning in Strom v. Goldman, Sachs & Co., 202 F.3d 138 (2d Cir.1999), supports their claim for relief. In Strom, the Second Circuit reversed the district court's conclusion that the requested damages constituted legal relief, finding instead that, because a claim for breach of fiduciary duty could traditionally be brought only in courts of equity, "make-whole" relief for such breaches could be considered equitable. Id. at 144. The Strom court analogized such "make-whole" relief to an award of backpay, which it stated was treated as equitable in the context of Title VII of the Civil Rights Act. Id. at 146. Strom was decided prior to Great-West, however, in which the Supreme Court further clarified its narrow construction of 29 U.S.C. § 1132(a)(3) and squarely rejected the backpay analogy. The Court noted that backpay was considered equitable "only in the narrow sense that [Congress] allowed backpay to be awarded together with equitable relief," Great-West, 534 U.S. at 218 n. 4, 122 S.Ct. 708 (emphasis in original), and indicated that when it is sought absent other equitable relief, it is legal relief that "is not authorized" by section 1132(a)(3). Id. at 218, 122 S.Ct. 708.
 
 
 11
 We agree with the conclusion that Great-West"appears to foreclose Strom's `make-whole' remedial scheme." De Pace v. Matsushita Electric Corp. of Am., 257 F.Supp.2d 543, 563 (E.D.N.Y.2003) (finding that plaintiffs were seeking legal relief when they sought money damages measured by the difference between the benefits they received and those they were promised); see also Millsap v. McDonnell Douglas Corp., 368 F.3d 1246, 1260 (10th Cir.2004) (finding that the Supreme Court had rejected all of plaintiff's arguments that a free-standing claim for backpay could not be considered equitable relief, but was instead legal relief).
 
 
 12
 The Calhoons attempt to distinguish Great-West by pointing out that their claim is against a fiduciary, while Great-West involved a suit against a non-fiduciary. Great-West's broadly phrased reasoning forecloses such an argument, however, for the Court looked only to "the nature of the relief sought" and whether it was a category of relief that was typically available in equity in determining the availability of a remedy under section 1132(a)(3). Great-West, 534 U.S. at 215, 219, 122 S.Ct. 708. In addition, the statutory language does not condition available remedies on the defendant's identity, but simply states that "a participant, beneficiary, or fiduciary" may bring a civil action "to obtain other appropriate equitable relief" to enforce the act or the plan. 29 U.S.C. § 1132(a)(3). We agree with the Tenth Circuit's rejection of this argument and conclude that the status of the defendant, although perhaps relevant to whether a case could be brought in equity, does not affect the relevant inquiry of what type of relief was generally available. Callery, 392 F.3d at 409.
 
 
 13
 The Calhoons seek damages in the amount of the medical bills and costs that they accumulated when they lost COBRA coverage. The Calhoons paid Taben only the first payment for the coverage, but seek to recover the equivalent of full plan coverage, as opposed to the amount of the premiums they paid. Even though the plan no longer exists, they seek to impose liability for the full amount of coverage on Taben, the plan's former administrator, which has not gained any measurable undue benefit from the lapse in coverage. The district court correctly concluded that the requested monetary relief is in the nature of legal relief because it seeks to impose personal liability on the defendant, is measured by the plaintiffs' loss, and does not involve traceable funds that belong to the plaintiff and are being unlawfully held by the defendant.
 
 
 14
 Finally, the Calhoons argue that it is contrary to the purposes of ERISA to leave them without any remedy. They are unable to seek the remedy of reinstatement under section 1132(a)(3) due to TWA's bankruptcy and may not sue for benefits under section 1132(a)(1), both because the plan no longer exists and because they are no longer members of the plan. The Supreme Court has confirmed, however, that the judicial branch may not expand the remedial scheme prescribed in ERISA based on vague notions of policy, particularly when the text of the statute and the Supreme Court's interpretation of the text are specific about available remedies. See Great-West, 534 U.S. at 220-21, 122 S.Ct. 708. We must respect Congress' decision to limit relief, however desirable it might be to grant it to a particular plaintiff. Id. at 218, 122 S.Ct. 708. Because the relief sought by the Calhoons cannot be characterized as anything other than legal relief, they may not recover under section 1132(a)(3)(B).
 
 
 15
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri