**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 2, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SHAUNN NEGLEY,

      Plaintiff-Appellant,

v.

BREADS OF THE WORLD
MEDICAL PLAN; BREADS OF THE
WORLD, L.L.C., doing business as
Panera Bread,

      Defendants-Appellees.

No. 05-1415
(D.C. No. 02-cv-840-ZLW-PAC)
(D. Colo.)

---

**ORDER AND JUDGMENT***

---

Before **HOLMES**, **McKAY**, and **BRORBY**, Circuit Judges.

---

Shaunn Negley appeals the district court's grant of judgment as a matter of

law in favor of Breads of the World Medical Plan (BOW Plan or Plan) and Breads

of the World, L.L.C. (BOW). We exercise jurisdiction pursuant to 28 U.S.C.

§ 1291 and **AFFIRM**.

---

\*     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

Mr. Negley began employment with BOW in June 2001. BOW told Mr. Negley his eligibility date for health insurance through the BOW Plan was July 1, 2001. Benefits under the BOW Plan were fully insured by Medical Mutual of Ohio (MMO). MMO is not a party to this action. BOW forwarded health plan enrollment materials to Mr. Negley on several different occasions at various addresses, but he did not receive the materials until September 28. After submitting his enrollment form to MMO on October 8, Mr. Negley was enrolled in the BOW Plan effective November 1, according to the terms of the Plan documents. Based on that effective date, Mr. Negley was subject to a preexisting condition exclusion under the Plan for a number of months and, as a result, he incurred medical expenses that were not covered by his health insurance.

Mr. Negley filed this lawsuit against BOW and the BOW Plan, seeking damages for his lost medical benefits under § 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a). He alleged that BOW, as an ERISA fiduciary, violated its duties to properly transmit health plan enrollment materials to him, to advise him of applicable deadlines for submitting his enrollment materials, and to promptly enroll him in the BOW Plan by submitting those materials to MMO within the deadlines. As a result of BOW's alleged breach of fiduciary duty, Mr. Negley sought damages, including but not limited to medical and related expenses, as well as costs, attorneys' fees,

prejudgment interest, statutory penalties authorized by ERISA, and such other and further relief as the district court deemed fit.

Mr. Negley's case was tried to the court in April 2004. Defendants moved for judgment as a matter of law after the close of plaintiff's evidence and again following the submission of all of the evidence. They argued, in relevant part, that the money damages Mr. Negley sought were not recoverable on a breach of fiduciary duty claim under ERISA § 502(a)(3), which provides only for "appropriate equitable relief." The district court initially denied the motions and proceeded to make oral findings of fact and conclusions of law, concluding that BOW had breached its fiduciary duty by failing to provide complete and accurate information about when Mr. Negley's benefits began under the BOW Plan and the deadlines related to his enrollment. The district court asked the parties to confer and agree on the amount of damages and a manner by which the money could be disbursed directly to Mr. Negley's medical providers, rather than paid to him. The court deferred entry of judgment pending resolution of the damages issues.

While the post-trial briefing proceeded, defendants renewed their motions for judgment as a matter of law and submitted supplemental authority, including a Tenth Circuit decision that had issued since the conclusion of the trial: *Callery v. United States Life Insurance Co. in the City of New York*, 392 F.3d 401 (10th Cir. 2004). Relying on *Callery*, the district court granted defendants' motions for judgment as a matter of law and Mr. Negley appealed.

## II. Discussion

In a trial to the court, a motion for judgment as a matter of law is governed by Fed. R. Civ. P. 52(c). *See Nieto v. Kapoor*, 268 F.3d 1208, 1217 (10th Cir. 2001) (noting motion for judgment in bench trial is governed by Rule 52(c), rather than Rule 50). On appeal of a Rule 52(c) motion, "[w]e review the district court's fact findings for clear error and its legal conclusions de novo." *Id.*

## A. Compensatory Damages

In *Callery*, we held that compensatory damages are not recoverable under § 502(a)(3). 392 F.3d at 404-06. The district court held that *Callery* precluded the damages relief sought by Mr. Negley in his claim based upon that same ERISA section. Mr. Negley contends that the district court failed to properly construe § 502(a)(3) consistent with Congress's primary intent to provide a set of broad, flexible and comprehensive remedies–what Mr. Negley refers to as a safety net that permits make-whole relief. Specifically, he argues that § 502(a)(3) should be interpreted consistent with the principles of trust law, under which equity courts traditionally could remedy a breach of fiduciary duty by ordering the payment of money. Thus, Mr. Negley asserts that the district court erred by failing to award damages for his lost medical benefits as appropriate equitable relief under § 502(a)(3). As the district court noted, however, these arguments were thoroughly addressed–and rejected–in this court's opinion in *Callery*. We will not revisit them here.

-4-

Nor do we believe the district erred by failing to find *Callery* factually distinguishable from this case. Mr. Negley asserts that the relief the plaintiff sought in *Callery* was not benefits under the policy, but money damages for the lost opportunity to obtain other coverage. This is a distinction without a difference for purposes of the district court's ruling.

In *Callery* we explicitly stated, "To the extent Ms. Callery seeks payment of the policy proceeds, such relief is barred under § 502(a)(3)." 392 F.3d at 405. The fact that Mr. Negley's measure of damages was the value of his lost benefits, rather than the lost opportunity to obtain the same benefits elsewhere, does not change the analysis. He, like the plaintiff in *Callery*, sought money damages from defendants due to a breach of fiduciary duty. *See Calhoon v. Trans World Airlines, Inc.*, 400 F.3d 593, 598 (8th Cir. 2005) (applying the reasoning of *Callery* and concluding that plaintiffs, who sought "to recover the equivalent of full plan coverage" due to an alleged breach of fiduciary duty, could not recover under § 502(a)(3); they were not seeking "appropriate equitable relief").

Mr. Negley also argues that the district court erred in holding that monetary relief is *never* available under § 502(a)(3). But the district court made no such ruling, and in fact it specifically noted that restitution is one remedy a plaintiff could pursue under that section. However, the district court recognized that restitution was not available in this case because Mr. Negley did not seek return of any amounts he had paid. Nor did he alternatively seek to recover particular

funds in defendants' possession. *See Callery*, 392 F.3d at 406 (noting restitution available under § 502(a)(3) through constructive trust or equitable lien where money can be traced to particular funds in defendant's possession).

We therefore affirm the district court's conclusion that the compensatory damages Mr. Negley sought are not recoverable under § 502(a)(3) for substantially the reasons stated in the district court's order and judgment of dismissal dated August 17, 2005.

## B. Alternative Equitable Remedies

Mr. Negley argues that even if the district court properly rejected his claim for damages, it failed to consider and grant his proposed alternative equitable remedies. He asserts that his claim was really for reinstatement in and/or reformation of the BOW Plan, with the goal of returning him to his rightful position in the Plan. He claims that he could recover money damages in conjunction with an equitable order, relying on *Adams v. Cyprus Amax Minerals Co.*, 149 F.3d 1156, 1162 (10th Cir. 1998) (holding under ERISA § 502(a)(1) that the remedy sought is equitable when a "claim for monetary relief is inextricably intertwined with equitable relief").

The district court did address the possibility of reinstatement in its order and we find no error in its conclusion that reinstatement would not have provided Mr. Negley with the ultimate relief he sought. Indeed, the evidence established that he was enrolled in the Plan as of November 2001. The district court did not

expressly address Mr. Negley's request for reformation of Plan documents in its order. However, despite pressing for this relief in his opening brief, Mr. Negley ultimately concedes in his reply brief that reformation of the BOW Plan would be improper. *See* Reply Br. at 13. We agree.

> Reformation is an equitable remedy used to reframe written contracts to reflect accurately [the] real agreement between contracting parties when, either through mutual mistake or unilateral mistake coupled with actual or equitable fraud by the other party, the writing does not embody the contract as actually made.

*Fischer Imaging Corp. v. Gen. Elec. Co.*, 187 F.3d 1165, 1169-70 (10th Cir. 1999) (quotation omitted) (alteration in original). There has been no such allegation or evidence in this case with respect to the BOW Plan. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005) (finding no error in district court's failure to grant reformation under § 502(a)(3) where plaintiff did not allege any proper basis, including fraud, mutual mistake or terms violative of ERISA).

Nonetheless, Mr. Negley asserts that the district court's interpretation of the remedies available under § 502(a)(3) still left open one equitable remedy that the court should have granted: correction of his enrollment date in the Plan. The district court did note that, to be eligible for benefits under the Plan, Mr. Negley would need "an order *requiring MMO* to make Plaintiff's enrollment date retroactive." Aplt. App. at 179 (emphasis added). Mr. Negley does not dispute that the court could not order MMO to do anything, or otherwise take action

purporting to bind MMO, because it was never a party to this action.  It appears Mr. Negley believes the district court should have simply entered something in the nature of a nunc pro tunc order deeming his enrollment to have occurred on July 1, 2001, several months earlier than it actually did.  He contends that such an order would give him grounds to attempt to persuade MMO to reconsider its denial of his claims for medical benefits.  He cites no case in which such a remedy has been granted under similar (or any) circumstances.  *See Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992) (noting party must support its argument with legal authority).[1]

We conclude that the district court did not err in failing to grant this relief because it had no authority to do so.  First, Mr. Negley lacked standing to seek it.  It is appropriate for this court to consider a standing issue *sua sponte* because it directly implicates our Article III jurisdiction.  *See United States v. Parker*, 362 F.3d 1279, 1284 (10th Cir. 2004).  Under the redressibility requirement of

---

[1]    Defendants contend that the district court did not err in failing to grant this relief because Mr. Negley never sought it or any other equitable remedy until after the trial.  But they do not assert that the proof at trial failed to support this relief or that they would have offered other testimony or evidence had Mr. Negley raised it earlier in the proceedings.  *See* Fed. R. Civ. P. 54(c) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."); *Reynolds v. Slaughter*, 541 F.2d 254, 255-56 (10th Cir. 1976) (rejecting defendant's assertion that plaintiff elected irrevocably to sue only for damages and specific performance and affirming district court's grant of restitution consistent with the proof under Rule 54(c)).

standing, a plaintiff must demonstrate "a substantial likelihood that the relief requested will redress its injury in fact." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005). In *Nova Health Systems* this court held that it was "entirely speculative" whether a judgment against the defendants would redress the plaintiff's injury by deterring non-parties from taking similar action. *Id.* at 1159. "More fundamentally, it overlooks the principle that it must be the effect of the court's judgment *on the defendant* that redresses the plaintiff's injury, whether directly or indirectly." *Id.* (emphasis added). Mr. Negley's requested remedy would be similarly speculative in terms of its ability to provide redress for his injury. Such a remedy also would run afoul of the limitation that the district court could only enter an order directed to affecting the behavior of BOW and the Plan, the only defendants before it. Thus, Mr. Negley had no standing to seek, and the district court had no authority to enter, such an order, the purpose of which was to assist Mr. Negley in possibly gaining redress for his injury from a non-party.

In any event, the district court had no authority to enter an order which would have amounted to a rewriting of history. *See Patton v. Denver Post Corp.*, 326 F.3d 1148, 1153 (10th Cir. 2003) (holding that nunc pro tunc state court order was qualified domestic relations order under ERISA because, among other reasons, it did not "attempt to rewrite historical facts"); *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001) (holding that nunc pro tunc order "cannot

be used to rewrite history") (quotation omitted); *see also In re Di Franco*, 339 F. Supp. 414, 414-15 (S.D.N.Y. 1972) (denying petitioner's motion to antedate the actual occurrence of his naturalization). As the court stated in *Di Franco*, "it is not the function of a nunc pro tunc order to antedate the actual performance of an act, to supply facts which never existed, or to embody a fiction that something which never happened did actually occur." 339 F. Supp. at 414. Therefore, we hold that the district court did not err in failing to grant Mr. Negley's request to "correct" his enrollment date in the Plan.[2]

### C. Prejudgment Interest, Attorneys' Fees and Costs

Mr. Negley also contends that the district court should have granted his requests for prejudgment interest, attorneys' fees, and costs, despite the fact that he was not awarded any damages and judgment was entered against him. Defendants are correct that Mr. Negley never made this argument in the district court. He did file post-trial motions for attorneys' fees and costs, after the district court indicated its intention to enter judgment in his favor. Defendants assert that Mr. Negley actually waived his claim for interest at trial. Regardless of Mr.

---

[2] Mr. Negley maintains in his reply brief that his case differs from *Callery* because the BOW Plan is a defendant. He asserts that the district court should have ordered the BOW Plan to pay him his lost benefits, in conjunction with revision of his enrollment date, and that the court should then have further ordered BOW to reimburse the Plan pursuant to 29 U.S.C. § 1109(a). We decline to address these arguments made for the first time in his reply brief. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) (refusing to consider issue raised initially in reply brief).

Negley's initial arguments to the district court on all of these issues, it is clear that once the district court changed course and entered judgment against him, he never sought this relief again before the district court as a non-prevailing party, or as he argues on appeal, a partially-prevailing party. Therefore, we decline to consider his arguments with respect to prejudgment interest, attorneys' fees, and costs that he raises for the first time on appeal. *See Tele-Commc'ns, Inc. v. Comm'r*, 104 F.3d 1229, 1233 (10th Cir. 1997) ("[A]n issue must be presented to, considered and decided by the trial court before it can be raised on appeal.") (quotations and brackets omitted).

### III. Conclusion

The judgment of the district court is **AFFIRMED**. Mr. Negley's motion to supplement the appendix is **GRANTED**; and defendants' motion to file a surreply brief is **DENIED** as moot.

Entered for the Court


Jerome A. Holmes
Circuit Judge